## CITY OF WICHITA FALLS v. LANDERS.
### (No. 11688.) *

(Court of Civil Appeals of Texas. Fort Worth. Jan. 15, 1927. Rehearing Denied Feb. 12, 1927.)

**1. Municipal corporations ☜712—Amount paid by city for injury by defective sewer held properly chargeable to account for maintenance of sewer system.**

Amount paid by city from liability incurred for death resulting from defective opening in sewer into which deceased fell *held* properly chargeable to account for maintenance of sewer system.

**2. Municipal corporations ☜712—City held authorized to require payment of charges for use of sewer system and fix amount of charges (Rev. St. 1925, arts. 1165, 1176, and art. 1175, subds. 13, 29, 34).**

City of Wichita Falls *held* authorized to enact ordinance requiring payment of charges by resident citizens for use of sewer system and to fix amount of such charges, in view of city charter and Rev. St. 1925, arts. 1165, 1176, and article 1175, subds. 13, 29, 34.

**3. Municipal corporations ⊚⟹712—Annual charge of $6 for use of sewer system held not unreasonable.**

Charge of $6 annually assessed against resident citizens for use of sewer system having value of $1,000,000 *held* not unreasonable.

**4. Municipal corporations ⊚⟹712—Court may ascertain reasonableness of charges for use of sewer system.**

Court has jurisdiction to ascertain reasonableness of city's charges for use of sewer system; at least to extent of determining whether rates are confiscatory or deprive company of property without due process of law.

**5. Municipal corporations ⊚⟹712—City is entitled to reasonable allowance for depreciation and interest in fixing charges for use of sewer system.**

City owning sewer system *held* authorized to charge such amount for use of such system as to provide reasonable allowance for depreciation and obsolescence and reasonable interest on investment.

**6. Municipal corporations ⊚⟹712—Citizen cannot resist payment of reasonable charge for use of sewer, though city appropriated money to extend system without authority.**

Where city's charges for use of sewer system were reasonable in amount, citizen cannot resist payment even though city thereafter appropriated such payment in part to extension of system without charter authority.

**7. Municipal corporations ⊚⟹712—City held not limited to bond issue for construction of sewer system, but might impose charges for special benefits (Rev. St. 1925, art. 1106; Wichita Falls City Charter, §§ 67, 70, 71).**

City of Wichita Falls is not necessarily limited to bond issue for construction or extension of public utilities such as sewer system, but may impose charges for special benefits received, in view of Wichita Falls City Charter, §§ 67, 70, 71, and Rev. St. 1925, art. 1106.

**8. Municipal corporations ⊚⟹712—Charge for use of sewer system is charge for special benefits rather than general tax.**

Charges assessed by city for use of sewer system cannot be construed as general tax, but are charges for special benefits received by certain persons residing in city but not enjoyed by all.

**9. Municipal corporations ⊚⟹712—Ordinance providing for removal of sewer connections for nonpayment of charges does not conflict with penal ordinance requiring connection.**

Ordinance fixing charges for use of sewer system, with provision for removal of connections made by property owner if he fails to pay charges so fixed, is not void as being in conflict with penal ordinance requiring property owner to make such connection.

**10. Municipal corporations ⊚⟹48(2)—Legality of adoption of charter cannot be attacked in suit to compel city to reconnect premises with public sewer (Rev. St. 1925, art. 1167).**

Legality of charter of city of Wichita Falls, because not adopted as provided by Rev. St. 1925, art. 1167, is not subject to collateral attack in suit to compel city to reconnect plaintiff's premises with public sewer, since no one but state through Attorney General can raise such objection, which must be done in direct proceeding to forfeit charter.

Appeal from District Court, Wichita County; E. G. Thornton, Judge.

Suit by T. B. Landers to compel the City of Wichita Falls by writ of mandamus to reconnect his premises with the public sewer, and to restrain it from again removing the connections. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

E. M. Mann and W. E. George, both of Wichita Falls, for appellant.

Harris & Martin, of Wichita Falls, for appellee.

DUNKLIN, J. On March 30, 1920, the city of Wichita Falls, then having a population of more than 5,000 inhabitants, acting under and by virtue of what is termed the Home Rule Amendment to the Constitution (article 11, § 5 [see Laws 1911, p. 284]), and the statutes passed to make the same effective, adopted a charter in accordance with the requirements of the statutes, and is now operating thereunder. Prior to the adoption of that charter the city had issued bonds for the purpose of constructing and extending a sanitary sewer system as follows: On January 1, 1908, in the sum of $4,500; on October 15, 1908, in the sum of $2,000; on November 15, 1912, in the sum of $3,500. On November 1, 1920, which was after the adoption of its present charter, the city issued bonds in the sum of $700,000 for the purpose of rebuilding and extending its sewer system within the limits of the city. The proceeds of all the bonds so issued were expended for the purposes so intended, and the cost of the sewer system has been fully paid for out of those funds.

By Ordinance No. 281, which was enacted by the board of aldermen of the city on May 6, 1920, all owners of premises in the city having privies or dry toilets on such premises within 200 feet of any sanitary sewer of the city were required to make permanent connections with the same. The owners of premises not situated within 200 feet of such sewer system were required to construct dry toilets of the type specified in the ordinance. Any violation of the provisions of the ordinance was made a misdemeanor with a penalty attached consisting of a fine in any sum not exceeding $100.

On December 30, 1922, the board of aldermen passed Ordinance No. 426. Section 1 of that ordinance reads as follows:

"It being absolutely necessary for the proper maintenance and extension of the sewer system of the city that a reasonable charge be made to all users of the sewer system of the city, the

following annual charges are hereby fixed to be paid by all users of said system, the same to be paid semiannually in advance, as hereinafter provided, to wit:

"1. For each private residence occupied by owner and family or by tenant and family, $6.00."

Then follow specifications of charges for business houses, rooming houses, hotels and many others.

Another provision of that ordinance reads as follows:

"Any person or corporation who shall fail to pay the sewer charges within thirty days after same becomes due, shall be subject to have his sewer disconnected from the city system, and if disconnected, no connection thereafter be made with the city sewer system until such party shall have paid all amounts due and all costs of disconnecting and reconnecting with said system."

The concluding section of the ordinance reads as follows:

"There being no reasonable, proper and adequate charges for sewer services in the city of Wichita Falls, creates an emergency and necessity for the suspension of the rule requiring ordinances to be read upon three separate meetings and this ordinance is declared to be an emergency measure and is passed at this meeting by unanimous vote of all the aldermen of the city of Wichita Falls and shall become effective immediately upon its passage."

T. B. Landers is a resident citizen of the city of Wichita Falls, and owns his own home, which is situated within 200 feet of the public sanitary sewer system of the city. During the month of February, 1920, he caused his premises to be connected with the sewer system and installed the proper fixtures and connections necessary thereto, paid all assessments and charges for such connection, and maintained the same in proper condition until February 4, 1926. During all that period he failed and refused to pay the charge of $6 per annum fixed by Ordinance 426 for sewer use; and after repeated notices and demands for such payments, the city, on February 26, 1926, removed the connections with the sewer system which had theretofore been installed by Landers, leaving his premises disconnected from the public sewer.

Landers instituted this suit to compel the city by a writ of mandamus to reconnect his premises with the public sewer as it had theretofore been connected and to restrain it from again removing such connections; and from a judgment of the district court granting that relief, the city has prosecuted this appeal.

The facts developed upon the trial were all agreed to by the parties, and the same appear in the record before us.

Since the adoption of the Ordinance No. 426, the city has collected charges for the use of its sewer system in the sum of $71,- 906.40, the following statement showing the amount collected for each year and the purposes for which the funds were expended:

|  | Receipts. | Disbursements. | |
| --- | --- | --- | --- |
|  | Amt. Collected. | Maintenance. | Construction. |
| 4/1/23 to 4/1/24 | $25,606.25 | $10,514.92 | $ 6,978.62 |
| 4/1/24 to 4/1/25 | 27,267.09 | 12,355.79 | 17,050.73 |
| 4/1/25 to 3/1/26 | 19,033.06 | 7,985.06 | 10,640.61 |
|  | $71,906.40 | $30,855.77 | $34,669.96 |
| Pete Vernon death claim |  | 3,439.00 | |
|  |  | $34,294.77 | |

[1] The death claim referred to was a liability incurred for a death resulting from a defective opening in the sewer into which the deceased fell, and it was properly chargeable to the account for maintenance.

It was agreed that the value of the sewer system of Wichita Falls is the sum of $1,000,000.

Julian Montgomery, a civil engineer who specialized in municipal enigneering, holding degrees in that branch of science from several universities, with 15 years' experience since leaving college, testified without contradiction that 2 per cent. of the cost of the city's sewer plant would be a reasonable charge for "depreciation and obsolescence." He explained that by the term "obsolescence" he meant the destroying of the usability of the plant for which it was built, by reason of the equipment and construction becoming obsolete or out of date. He further stated, in substance, that there was always a risk on the part of the city of liability for accidents resulting from the defective condition of the sewers, and cited several accidents on account of which damage suits were filed against the city, such as the collision of an automobile with a manhole cover in the sewer that had been set too high above the level of the street; the fall of a horse into a sewer drain; the death of a man resulting from a cave-in; an explosion in the sewer which resulted in injuries to property and persons; the flooding of cellars or basements of buildings, etc. In that connection he suggested that the losses to the city by reason of such accidents should be included in the expense of maintenance of the system.

In open court the city agreed to immediately connect the plaintiff's residence with the sewer system of the city and to allow the same to remain connected until the cause should be finally decided; the agreement being made without prejudice to or waiver of any rights of the city, under and by virtue of the two ordinances of the city noted above, until the final outcome of the suit. In accordance with that agreement the court ordered the defendant to reconnect plaintiff's premises with the sewer system, and the city and its officers were restrained from collect-

ing from the plaintiff any charges for the use of such system under and by virtue of Ordinance No. 426, which the court further decreed was void and of no further force and effect.

In appellee's brief, the following is said:

"The appellee believes the following statement covers all the issues on this appeal:

"(1) Was the ordinance in question authorized by the charter of the city of Wichita Falls?

"(2) Is said ordinance void as being in conflict with the ordinance requiring the appellee to make permanent connections with the sewerage system?

"(3) Are the charges made by such ordinance unreasonable and unconstitutional?"

[2] Those issues were tendered in plaintiff's petition, but it does not appear in the recitals in the court's decree upon what ground the ordinance was held to be void. The charter of the city contains, among others, the following provisions:

"Section 7. The city of Wichita Falls shall have power: * * *

"(b) To furnish all local public service of whatever nature. * * *

"(h) To create, provide for, construct, regulate and maintain all things in the nature of public works and improvements.' * * *

"(k) To define, prohibit, abate, suppress and prevent within the city, and for a distance of five thousand feet outside its limits, all nuisances and causes thereof and all things detrimental to the health, morals, safety, convenience and welfare of its inhabitants. * * *

"(n) To do all things necessary or desirable to secure and promote the public health. * * *

"(r) To make and enforce local police, sanitary and other regulations.

"(s) To pass such ordinances as may be expedient for maintaining and promoting the peace, safety, good government and welfare of the city and for the performance of the functions thereof.

"(t) To exercise in addition to the powers enumerated in this section, all powers that now are, or hereafter may be, granted to municipalities by the Constitution or laws of the state of Texas; and all the powers of the city whether expressed or implied, shall be exercised and enforced in the manner prescribed in this charter, or when not so prescribed, then in such manner as may be provided by ordinance or resolution of the board of aldermen.

"(u) To have and exercise all of the powers, rights, privileges and immunities of every character and description whatsoever conferred upon and granted to cities of more than five thousand inhabitants to adopt and amend their charters by chapter 147, page 307, of the General Laws of Texas, passed by the Thirty-Third Legislature of said state in 1913, and approved April 7, 1913, as well as any and all amendments thereof heretofore or which may be hereafter adopted thereto.

"Section 8. The enumeration of powers by this charter shall not be held or deemed to be exclusive, but, in addition to the powers enumerated herein implied thereby or appropriate to the exercise thereof the city shall have, and may exercise, all other powers, which, under the Constitution and laws of Texas, it would be competent for this charter specifically to enumerate, it being the intention hereof that the powers of the city of Wichita Falls shall extend to all matters of local and municipal government."

"Section 150. All questions arising in administering said city government and not provided for in this charter shall be governed by the state laws in such cases made and provided."

Chapter 147 of the General Laws of Texas, passed by the Thirty-Third Legislature in 1913, referred to in the charter, is embodied in chapter 13 of title 28 in the Statutes of 1925. Article 1165 of that statute is, in part, as follows:

"Cities having more than five thousand inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature. No charter or any ordinances passed under said charter shall contain any provision inconsistent with the Constitution or general laws of this state; said cities may levy, assess and collect such taxes as may be authorized by law, or by their charters. * * *"

Article 1175 reads:

"Cities adopting the charter or amendment hereunder shall have full power of local self-government, and among the other powers that may be exercised by any such city the following are hereby enumerated for greater certainty:

* * * * * * * * *

"13. To buy, own, construct within or without the city limits and to maintain and operate a system or systems, of gas, or electric lighting plant, telephone, street railways, sewerage plants, fertilizing plants, abattoir, municipal railway terminals, docks, wharfs, ferries, ferry landings, loading and unloading devices and shipping facilities, or any other public service or public utility, and to demand and receive compensation for service furnished for private purpose or otherwise, and to exercise the right of eminent domain as hereinafter provided for the appropriation of lands, rights of way or anything whatsoever that may be proper and necessary to efficiently carry out said objects. Any city shall have the power to condemn the property of any person, firm or corporation now conducting any such business and for the purpose of operating and maintaining any such public utilities and for the purpose of distributing such service throughout the city or any portion thereof; provided that any city may adopt by its charter any such rules and regulations as it may deem advisable for the acquiring and operation of any such public utilities. * * *

"29. To provide for a sanitary sewer system and to require property owners to make connections with such sewers with their premises and to provide for fixing a lien against any property owner's premises who fails or refuses to make sanitary sewer connections and to charge the cost against said owner and make it a personal liability. To provide for fixing penalties for a failure to make sanitary sewer connections. * * *

"34. To enforce all ordinances necessary to protect health, life and property, and to prevent and summarily abate and remove all nuisances and to preserve and enforce the good government, order and security of the city and its inhabitants."

Article 1176 reads:

"The enumeration of powers hereinabove made shall never be construed to preclude, by implication or otherwise, any such city from exercising the powers incident to the enjoyment of local self-government, provided that such powers shall not be inhibited by the state Constitution."

[3] In view of the quoted provisions of the charter and the statutory provisions referred to above, we think it manifest that appellant was authorized to enact an ordinance requiring the payment of charges by resident citizens for the use of the sewer system, and to fix the amount of such charges. Furthermore, we overrule the contention of appellee that the charges were unreasonable.

[4] In McQuillin, Municipal Corporations, vol. 8, the question of regulation by a municipality of the charges made by the public service corporation is discussed in section 1746 of the text, and the following is said:

"Concerning the power of the judiciary to review rates established, these propositions are settled:

"(1) A court has jurisdiction to ascertain their reasonableness, at least to the extent of determining whether the rates are confiscatory or deprive the company of its property without due process of law.

"(2) Rates fixed by law are presumed reasonable, and he who asserts the contrary must establish it by satisfactory evidence.

"(3) Judicial interference is sanctioned only where the evidence demonstrates that the rates involved are clearly, palpably and grossly unreasonable."

Section 1748 reads:

"Three theories of valuation are in vogue: (1) The original cost plus subsequent expenditures which is termed the investment theory; (2) the present value; and (3) the cost of reproduction.

"These several methods of valuation, however, merely constitute evidence to be considered with all other relevant facts, in determining the fair value of the property used and useful in the supply of the service."

Section 1803 reads:

"Where the municipality owns its plant, the rates for water, light or any other product, furnished by it must be fair, reasonable and just, uniform and nondiscriminatory. The same rules enforced against public service corporations in these respects, as herein already stated, are applied with full force to the municipality."

[5] Two per cent. on the value of the sewer system of the city, which the city engineer testified was a reasonable allowance for depreciation and obsolescence, would amount to $20,000, and, taking the value of the sewer system and allowing a reasonable interest on the investment, which, according to all the authorities the city would be authorized to charge for the use of the sewer system, the amount would be far in excess of the total charges collected by the city under Ordinance 426.

[6] Furthermore, if the charges were reasonable in amount, appellee could not resist their payment, even though it should be said that the city thereafter appropriated the same in part to an extension of the system without charter authority.

[7] Section 75 of the city's charter authorizes the issuance of bonds for the purpose of constructing and repairing public buildings, making permanent street improvements, or constructing storm or sanitary sewers or public market houses, upon the vote of the majority of the qualified property taxpaying voters of the city at an election held for that purpose. The contention is made by appellee that, since the payment of such bonds would be made out of taxes levied throughout the entire city, appellant was not authorized to raise the necessary funds for such public improvements in any other manner than by a bond issue, and that the levy of charges for sewer service in order to raise funds for the extension of the sewer, as well as for the maintenance thereof, was in violation of the charter and of the constitutional guaranty of equal protection of the laws. We cannot concur in that view.

Section 67 of the charter provides for the passage by the board of aldermen of a budget estimate of the expenditures and revenues of all city departments, divisions, and offices for the ensuing year. Subdivision A of that section includes the following to be shown in the estimate:

"A detailed estimate of the expense of conducting each department, division and office."

Section 70 reads as follows:

"The board of aldermen may transfer any part of an unincumbered balance of an appropriation to a purpose or object for which the appropriation for the current year has proved insufficient, or may authorize a transfer to be made between items appropriated to the same office, department or divisions, where not in contravention of the Constitution and laws of this state, or other provisions of this charter."

Section 71 reads:

"Any accruing revenue of the city, not appropriated as hereinbefore provided, and any balance at any time remaining after the purposes of the appropriation shall have been satisfied or abandoned, may from time to time be appropriated by the board of aldermen to such uses as will not conflict with any uses for which specifically such revenue accrued, and where not in conflict with the Constitution and laws of this state, or other provisions of this charter."

Article 1106, Rev. Statutes of 1925, reads:

"The governing body of any city or town in this state, whether operating under special charter or under general laws, may appropriate and apply the net revenues of its water works system or other public utility system, service or enterprise to the payment of the sinking fund and interest due by said city or town on the bonded indebtedness incurred on account of said system, service or enterprise, producing such revenues in the following manner:

"1. Whenever said governing body desires to take advantage of the provisions of this article it shall at the end of its fiscal year, and before the passage of any ordinance levying taxes for that year, appropriate and set aside out of the net revenues such sums for such purpose only as such governing body shall deem to the best interest of the city or town.

"2. Where the sums so set aside and appropriated shall be sufficient to pay in full the amounts needed for such sinking fund and interest for the fiscal year in which said revenues are produced, it shall not be thereafter necessary for the governing body to levy any tax for such sinking fund or interest for which this appropriation is made; but when said sums so appropriated shall not be sufficient to meet the required amounts for such sinking fund and interest, then the governing body shall include in the general tax ordinance for that year a tax sufficient to meet the deficiency in such sinking fund and interest allowance for that year. Nothing herein shall authorize said city or town to exceed the authorized tax limit."

[8] Those provisions of the charter and that article of the statutes show that the city is not necessarily limited to a bond issue for the purpose of the construction or the extension of one of its public utilities. On the contrary, the argument to the effect that the section of the charter authorizing a bond issue for such purposes implies that such is the only method for raising the money for such purposes is conclusively overcome by other specific provisions of the charter and statutes noted already. The charges assessed for the use of the sewer system cannot be construed as a general tax. They were reasonable charges for special benefits received by certain persons residing in the city but not enjoyed at all. To hold Ordinance No. 426 void would result in a discrimination in favor of appellee and others similarly situated, who would in that event be furnished sewer service free of charge, as against those citizens who are required by the ordinance to construct and maintain dry sanitary toilets, all at their own expense and without any use of the sewers.

[9] Nor can we say, as insisted by the appellee, that Ordinance 426 is void as being in conflict with Ordinance 281. Ordinance 426 is not a penal ordinance, but is one fixing charges for the use of the sewer system, with provision for a removal of such connections as are made by the property owner in the event he fails to pay the charges so fixed. The removal of such connections is a reasonable regulation, since it certainly would be unfair to the city to require it to continue the service to the property owner when he refuses to pay the charges. Ordinance 281 is a penal ordinance requiring the property owner to make such connection. The authority to require such connections to be made by the property owner does not depend on whether or not the connections had theretofore been made by him. Whether or not plaintiff could be punished for failure to connect his premises with the sewer after the city had removed the connections he had theretofore made is a question which we are not called on to determine, since the right of the city to fix reasonable charges for the use of the sewer and to remove the connections therewith for failure to pay them is in no sense dependent upon how that issue should be determined.

[10] We overrule the contention that the charter was not legally adopted, by reason of the fact alleged in appellee's petition, to the effect that the charter was not so framed as to segregate each subject so that the voters might vote "yes" or "no" thereon as provided by article 1167 of the Statutes. That is a collateral attack on the charter, and no one but the state through its Attorney General can be heard to raise the objection, and that, too, by a direct proceeding to forfeit the charter.

In Graham v. City of Greenville, 67 Tex. 62, 2 S. W. 742, suit was instituted by a taxpaying citizen to enjoin the collection of taxes on property situated in a district annexed to the city by a vote of the inhabitants at an election held for that purpose. One of the grounds for the relief sought was that the election was not held in accordance with the Constitution and laws of the state. The decision rendered by the Supreme Court was in favor of the city, and in the opinion the following was said:

"But admitting that the vote was taken in a manner not sanctioned by the Constitution and laws, it was but an irregularity which did not render the action of the council void and ordinances passed in reference to the annexed territory of no effect. If a municipality has been illegally constituted, the state alone can take advantage of the fact in a proper proceeding instituted for the purpose of testing the validity of its charter. 'When the question arises collaterally,' says Mr. Cooley, 'the courts will not permit its corporate character to be questioned, if it appear to be acting under color of law, and recognized by the state as such.' And this though the manner of incorporation prescribed by the Constitution had not been followed. Cooley's Const. Lim. 312; Mendota v. Thompson, 20 Ill. 200; Kettering v. Jacksonville, 50 Ill. 39; Bird v. Perkins, 33 Mich. 28."

To the same effect are the decisions in the following cases: City of El Paso v. Ruckman, 92 Tex. 86, 46 S. W. 25; Harbin Ind. School Dist. v. Denman, 222 S. W. 538, by the Commission of Appeals; Wilmarth v. Rea-

gan, 242 S. W. 726, by the Commission of Appeals, and other authorities there cited.

For the reasons noted, the judgment of the trial court is reversed, and judgment is here rendered denying appellee any of the relief prayed for in his petition filed in the trial court.