**OHIO POWER CO et v CRAIG et**

Ohio Appeals, 5th Dist, Coshocton Co

Decided June 27, 1935

Charles Price, Kenton, C. M. Patterson, Coshocton, and Warner M. Pomerene, Coshocton, for plaintiffs.

Robert A. Carton, City Solicitor, Coshocton, and Wheeler & Ely, Coshocton, for defendants.

552

**OPINION**

By MONTGOMERY, J.

These several claims will be discussed in the order designated:

■ It is contended that funds obtained from water rentals or for water-works purposes cannot be diverted to any other purpose. Reliance is placed upon §3959, GC, and upon the two cases of City of Cincinnati et v Roettinger, 105 Oh St, 145, and Hartwig Realty Co. v City of Cleveland, 128 Oh St, 583. These authorities do justify and sustain that contention. Defendants in their briefs ignore this proposition, but in open court they conceded that such diversion of funds would be illegal.

By their answer, which is in effect a general denial, they deny any intention to divert funds obtained for water-works purposes to the generating or furnishing of electric current, which is the charge made by plaintiffs. However, various defendants, city officials, have, according to the record, expressed an intention to use this plant when improved, for the generation of electric current, and the record further shows that this proposed use was considered in the negotiations with the Public Works Administration. In view of these disclosures in the record of such intent and purpose, in spite of disclaimer now made, the plaintiffs were justified in asking, and are entitled to obtain from this court, an injunction against the use by the city of any money obtained for water-works extension purposes for the generation of electric current or for furnishing same to itself, or to any consumer, and there may be a finding accordingly.

■ From a study of this record, it would seem that the proposed improvement is of a capacity out of proportion to the needs of the city for water-works purposes. And the city council did ignore the written petition of what the record shows to be more than seventy-five per cent of the voters of the city, to substitute a water softening plant for a generating plant, and did pass all legislation as emergency legislation, thus forestalling any referendum or official erpression of opinion by the voters. However, mindful of the rule that a court should not substitute its judgment for that of a legislative body, and not finding any clear abuse of discretion on the part of the council, the prayer for injunction upon that ground is denied.

■ Is the proposed grant or loan of funds by the Public Works Administration illegal? In our judgment the propriety of such a grant is a political rather than a judicial question. It has been a source of discussion, often acrimonious, during the whole of the lifetime of this Republic. The grants of public moneys for purposes essentially local have been almost universally upheld under the General Welfare Clause of the Federal Constitution. The fact that the nominal political descendants of Jefferson and of Jackson have now adopted the political tenets of Hamilton and of Clay, and that the nominal political descendants of the latter are repeating the arguments of Jefferson and of Jackson, does not affect the legality of such grants. A change of political front does not justify a change in judicial attitude.

Moreover, the weight of authority as disclosed by pronouncements of the Federal Courts on such grants made in pursuance of the National Industrial Recovery Act sustains such grants. The recent decisions of the Supreme Court of the United States invalidating codes and certain restrictions provided in that Act, do not touch upon the question now before us. We see nothing in the claim of unlawful delegation of authority. Congress alone could and did appropriate the money. It certainly was never intended that Congress should supervise in detail the expenditure

of the money appropriated. Unless and until. the Supreme Court of the United States should hold such a grant void, it would ill become this court to make such a finding.

■ Sec 2293-10, GC, is in part as follows:

"Before any resolution, ordinance or other measure providing for the issuance of bonds, notes or other evidences of any subdivision is passed or adopted, the fiscal officer thereof shall certify to the bond-issuing authority the maximum maturity of such bonds or indebtedness, calculated in accordance with the provisions of the foregoing section, and no such bonds, notes or other evidences of indebtedness shall be authorized or issued with maturities extending beyond the maturities as thus certified by such fiscal officer."

The maximum maturity for various bonds is fixed by §2293-9, GC. Forty years is the maximum for bonds under class A.A., which covers water-works improvements to buildings, mains and other structures. Ten years is the maximum for meters; fire apparatus, etc., listed in class E. Where a bond issue includes two or more of the classes listed, it is provided under class I that the maximum maturity of bonds shall be the "weighted average" to be calculated by the fiscal officer.

In the instant case the obligation to issue these bonds was entered into September 13, 1934. The certificate of the fiscal officer was filed October 19, 1934, clearly not in compliance with §2293-10, GC. Approximately $100,000 of the proposed bond issue of $125,000 was for water-works improvements and extensions. The remainder was for meters and equipment. The certificate of the auditor fixed the maximum maturity of the total issue at forty years, clearly failing to comply with the requirement as to "weighted averages" provided by the statute cited.

This court held in the case of State ex Curren v Rees, Director, 36 OLR, 488, (12 Abs 185), that the provisions of the Uniform Bond Act of Ohio must be construed strictly and that substantial compliance is not sufficient. The Supreme Court overruled a motion to certify that case. We adhere to that conclusion and hold that decision applicable to the case at bar. Because of failure to comply with the provisions of that Act the plaintiffs are entitled to an injunction against the issuing of the proposed bonds.

■ The ordinance of the council of the city of Coshocton now in question authorized a mortgage upon improvements and extensions with a pledge of revenue to secure the payment of the bonds. It provided in §13 and its sub-sections A and C that, in the event of a foreclosure of the mortgage, the purchaser at foreclosure sale should have an exclusive franchise to operate the water-works system and that such purchaser might be any person, association of persons, partnership or corporation.

The granting of an exclusive franchise to operate a public utility is invalid as against public policy. By a long and almost unvaried line of decisions it has been held that such cannot be granted unless expressly authorized by statute, and no such authority is suggested to us.

Sec 614-73, GC, is as follows:

"No franchise, permit, license or right to own, operate, manage or control any public utility, herein defined as an electric light company, gas company, water works company or heating and cooling company, shall be hereafter granted or transferred to any corporation not duly incorporated under the laws of Ohio."

It may be contended that a possibility is anticipated which may never be realized, in that there may be no foreclosure, or that the purchaser may not be within the class excluded by this quoted section, and hence that an injunction on that ground would be premature. The force of that suggestion is recognized. However, it seems to us, that an ordinance, having such invalid features, and subjecting the people of a city to an obligation of $125,000 with such possibilities, should be declared ineffective, and such is the judgment of the court.

It is not the intention of the court to prevent the city of Coshocton from making needed improvements to its water-works system. Nor is it the intention to prevent the carrying out of other municipal enterprises, provided they be instituted and carried into effect in a manner authorized by law. What is done is to enjoin the carrying out of an ordinance and a contract invalid in the two respects mentioned, and to enjoin the diversion of money obtained for one purpose to an altogether different purpose, and there may be a decree accordingly.

Motion for new trial, if filed, will be overruled.

Exceptions may be noted.

LEMERT, PJ, and SHERICK, J, concur.