CITY OF MARYVILLE, MISSOURI, Respondent, v. RAY CUSHMAN, C. T. BALDWIN, J. B. TAYLOR, R. E. WYMAN and WEBER McMILLEN (Intervenors), Appellants, No. 43138—249 S. W. (2d) 347.

Court en Banc, May 27, 1952.

88

*E. L. Bartram* and *Gene Thompson* for appellants.

90

*Harold M. Hull, Robert B. Fizzell, Robert B. Fizzell, Jr., Stinson, Mag, Thomson, McEvers & Fizzell* for respondent.

92

CONKLING, J.—This is a proceeding filed by the respondent City of Maryville, Missouri, under Sections 108.310 to 108.350 RSMo. 1949, for a pro forma decree authorizing the issuance and declaring the validity of $450,000 principal amount of Combined Waterworks and Sewerage System Revenue Bonds of that city. Intervenors (hereinafter called appellants) who are taxpayers, water users and sewer users in Maryville, were permitted to file their intervening petition praying the bonds be held invalid. The decree of the circuit court declared the bonds valid and intervenors then appealed.

This is the first case in this Court which questions the validity of Sections 250.010 to 250.250, of the 1951 Supplement to RSMo. 1949, and VAMS, (House Substitute for House Bill 45 of the 66th General Assembly) (and hereinafter called the 1951 Act) and which became effective October 9, [350] 1951. Under the 1951 Act any city is authorized to combine its waterworks and sewerage systems, operate them as one combined system, and, if four-sevenths of the voters voting at a special election approve, it may issue its revenue bonds for improvements and additions payable from the revenues to be derived from the operation of such combined system.

The facts are not in dispute. Maryville is a city of the third class and has owned and operated its sewerage system and its waterworks for many years. On January 2, 1952, the city passed Ordinance 2392 prescribing a new schedule of water rates. On the same date, the city passed Ordinance 2393 declaring that for the public health, safety and welfare the city's waterworks and sewerage systems, including all future improvements and extensions thereof, should be operated and maintained as a combined waterworks and sewerage system as authorized in Section 250.020. On the same date, the city passed Ordinance 2394 calling a special election to submit to the voters of the city a proposition to issue and sell the above $450,000 of revenue bonds to defray the cost of improving and extending its combined waterworks and sewerage system. Notice of the election was duly published and at said election the voters of the city approved such proposed issue of revenue bonds by a vote of 1536 to 380. On February 1, 1952, the city's Ordinance 2395 declared the result of the election. On February 26, 1952,

the city's Ordinance 2396 fixed the city's rates to be charged and collected for the use of its sewerage system. And on February 26, 1952, pursuant to the 1951 Act, the city passed Ordinance 2397 authorizing the issuance and sale of the above revenue bonds, fixing the details, form and covenants of the bonds, providing for collection and segregation of the revenues, payment of bonds and interest, and setting up reserve and depreciation funds, etc.

The cause was submitted here on briefs without argument and appellants attack the constitutionality of certain of the above noted ordinances and of the 1951 Act upon grounds hereinafter specifically stated and considered. But intervenors do not contend that the city has failed to take any step required by the 1951 Act and do not attack the above election or the result thereof.

■ Appellants' brief first contends that the 1951 Act, and Ordinance 2397 and the bonds proposed to be issued, violate Section 27 of Article VI of the 1945 Constitution, V.A.M.S., "because said revenue bonds are being issued for a purpose not authorized by the Constitution." The State Constitution is a limitation upon the power of the General Assembly. It is not a grant of power to the General Assembly. State ex rel. Randolph County v. Walden, Judge, 357 Mo. 167, 206 S. W.(2d) 979, Kansas City v. Fishman, 362 Mo. 352, 241 S. W. (2d) 377. Except as limited by the State and Federal Constitutions the power of the General Assembly to enact legislation is substantially unlimited and absolute. Kansas City v. Fishman, supra, and cases there cited. It is therefore of no consequence that by the 1951 Act the Legislature authorized the issuance of revenue bonds for a purpose not specifically authorized by the State Constitution in Section 27 of Article VI. An identical question was ruled in Kansas City v. Fishman, supra. We conclude here as we did there that Section 27 of Article VI of our Constitution has no application whatever. Appellants ask us to overrule the Fishman case. We decline to do so. There is no reason to depart from the basic principle there re-affirmed.

■ Appellants next contend the 1951 Act is special legislation and regulates the local affairs of cities in violation of subparagraphs 21 and 22 of Section 40 of Article III of our Constitution by giving new powers to cities electing to issue sewerage revenue bonds; and in this connection appellants also contend the 1951 Act creates a new and separate class of cities in violation of Section 15 of Article VI of our Constitution. To that we cannot agree. Appellants' brief seems to base the above contentions upon their argument that the 1951 Act gives new and added powers to cities electing to issue the above character of revenue bonds which powers are not [351] possessed by cities not issuing such bonds, and cites Owen v. Baer, 154 Mo. 434, 55 S. W. 644.

The 1951 Act is neither local nor special. It does not undertake to regulate the local affairs of cities. It is general and of the widest

possible application. It is not limited to cities of any class, description, population or locality. By its terms (Section 250.010) it is applicable to all cities, towns and villages in the State "whether organized under the general law or by special charter, or constitutional charter." No new class of cities is created. Any city, regardless of class, may by ordinance combine its waterworks and sewerage systems, and extend and improve them in any of the five ways provided in Section 250.040. The 1951 Act is of a type similar to other laws authorizing cities to carry on particular activities in accordance with the provisions of such laws, such as, for example, Sections 71.350 and 71.360, which authorize certain cities to issue revenue bonds to acquire off-street parking facilities. That law was passed in 1947, and was held valid in Kansas City v. Fishman, supra.

In Owen v. Baer, supra, this Court considered a statute which authorized certain cities to issue special tax bills in payment of work for special sewer districts. In that case there was a concurrence only in the result reached. And in Hall v. City of Sedalia, 232 Mo. 344, 134 S. W. 650, this Court considered a statute which provided a scheme of sewer construction for third class cities and refused to follow Owen v. Baer, supra, and held that the proposition discussed by the Court in Owen v. Baer "is still an open question in this State." In Hall v. City of Sedalia, supra, we held the "possession of the power does not depend upon its exercise; it depends upon the general law, which is in force equally upon all cities of the class, whether or not it is invoked."

By the 1951 Act no election is necessary to apply the act to any city in the State, and any city may meet the cost of constructing, improving or extending its combined waterworks and sewerage system in the manner provided in Section 250.040. Under the 1951 Act neither the city nor its voters do anything to adopt or accept the Act, and it does not create any new class of cities. Under the power given by the 1951 Act to all cities, the voters of the city merely vote upon whether a particular type of bond shall be issued to finance a certain improvement. These contentions are overruled.

Appellants next contend that the instant revenue bonds now proposed to be issued by respondent city constitute an indebtedness of the city within the meaning of Section 26 of Article VI of our Constitution. We are not so persuaded. Examination of Ordinance 2397, of the proposed bonds in the light of the 1951 Act discloses that the principal and interest of the revenue bonds are payable solely from the *revenues* to be derived by the city from the operation of the combined waterworks and sewerage system, and the bonds on their face are payable solely as specified in Section 250.090. The taxing power of the municipality is not pledged and it is specified that the bonds shall not be a general obligation of the city within the constitutional provision. We have many times ruled that bonds pay-

able solely from the revenues of a municipal utility, service or facility, and not from taxation, are not a general municipal indebtedness within the Constitution. City of Springfield v. Monday, 353 Mo. 981, 185 S. W. (2d) 788, City of Lebanon v. Schneider, 349 Mo. 712, 163 S. W. (2d) 588, Woodmansee v. Kansas City, 346 Mo. 919, 144 S. W. (2d) 137, Grossman v. Public Water Supply Dist. No. 1, 339 Mo. 344, 96 S. W. (2d) 701, State ex rel. City of Hannibal v. Smith, 335 Mo. 825, 74 S. W. (2d) 367, State ex rel. Smith v. City of Neosho, 203 Mo. 40, 101 S. W. 99, and Kansas City v. Fishman, supra.

That the *revenues* of the city's *existing* waterworks and sewerage system are pledged to pay the instant revenue bonds does not convert such bonds into a general city indebtedness. The contrary results. The existing waterworks and sewerage systems are now combined and are a single system. The revenues thereof are pledged as a single combined system. But only the revenue (and not the property) of the combined system is pledged. And *revenues* of an existing system may be so pledged. [352] Grossman v. Public Water Supply District No. 1, supra. See also the Woodmansee and City of Lebanon cases, cited supra, and Poole v. City of Kankakee, 405 Ill. 521, 94 N. E. (2d) 416. (1950.) The 1951 Act does not authorize or permit the incurrence of an *indebtedness* by cities, towns or villages in violation of Section 26 of Article VI of our Constitution. And revenue bonds issued in compliance with the 1951 Act are not an *indebtedness* within the purview of said Section 26 of Article VI.

In Roach v. City of Columbia, 172 S. C. 478, 174 S. E. 461, pursuant to a statute much similar to our 1951 Act, the city had combined its water and sewer systems and proposed to issue and sell revenue bonds for improvement purposes payable from the revenues of its combined system. It was there contended the proposed revenue bonds were in fact general municipal obligations. The Court there said:

"The plaintiff, while objecting, has advanced no good reason why these two systems, for the purposes named, may not properly be united. It does not appear that they are so unlike as to make their unification for such purposes repugnant. On the other hand, it is a matter of common knowledge that a waterworks system is essential to the operation of a sewerage system, and that the two systems, in some ways, bear a real relationship to each other.

"Applying to the question before us the applicable principles laid down in former decisions of this court, we conclude and hold that the pledging of the revenues of the city's waterworks system for the payment of bonds to be issued by it for the purpose of enlarging its sewerage system does not violate section 7 of article 8 and section 5 of article 10 of the Constitution, and that such bonds, which do not carry the general credit of the borrower, will not constitute a 'bonded debt' of the city within the meaning of these constitutional provisions."

The fact that under Section 13 (c) of Ordinance 2397, if the revenues of the combined system shall at any time be insufficient to pay the cost of maintenance and operation and pay the bonds, that then the city in such event may charge itself a reasonable amount for water and sewer service furnished to the city departments, does not make the bonds a general indebtedness of the city. The above constitutes, at most, only a contingent obligation and not a debt. City of Springfield v. Monday, supra, State ex rel. Hannibal v. Smith, supra, City of Lebanon v. Schneider, supra. The contention made must be denied.

It is next contended that the 1951 Act is invalid because under it the city may use its waterworks revenues to improve its sewerage system, and that thus the 1951 Act violates State and Federal due process provisions by authorizing the moneys paid the city by water users to be used for a purpose other than defraying the cost of water service. Appellants further argue that the ordinances are not reasonable. Appellants seem to base this contention upon their ipse dixit that "there is no necessary connection between a city's water system and its sewerage system." Appellants' argument ignores the basic fact that the General Assembly has power to authorize a city to combine its waterworks and sewerage systems into a single system and to operate that single system as a unit. Pursuant to such statutory authority respondents' waterworks system and its sewerage system were so combined.

We cannot agree with appellants' position as to lack of logical and reasonable connection between a city's waterworks and sewer system. The purpose of a city water system is to furnish pure health-giving water to the inhabitants and users of water in a city. The purpose of a city sewer system is to collect such water after it has become contaminated and injurious to health and (with other unheathful substances) remove them all from the various premises and dispose of it all in sanitary manner. In State v. City of Miami, 157 Fla. 726, 27 Sou. (2d) 118, the Court observed that, " A sewer system is complementary to a water system. A sewer system would be of no value without a water system and a water system would be entirely incomplete without a sewer system." The cases [353] cited and relied on by appellants, Hartwig Realty Co. v. City of Cleveland, 128 Ohio St. 583, 192 N. E. 880, Ohio Power Co. v. Craig, 50 Ohio App. 239, 197 N. E. 820, and Jones v. Stearns, 275 Ky. 729, 122 S. W. (2d) 766, as disapproving the combination of certain utilities there considered are based on lack of statutory authority in those instances. Specific lack of statutory authority for the action considered in Jones v. Stearns, supra, was noted in Dunn v. City of Murray, 306 Ky. 426, 208 S. W. (2d) 309, where, upon later statutory authority therefor, the city proposed to issue and sell revenue bonds payable from revenues of the city's combined

waterworks and sewer system. The Court approved such issue of revenue bonds. See also, State v. Town of River Junction, 125 Fla. 267, 169 Sou. 676, Morse v. Wise, 37 Wash. (2d) 806, 226 Pac. (2d) 214, City of Harrison v. Braswell, 209 Ark. 1094, 194 S. W. (2d) 12, 165 A. L. R. 845, Eagle v. City of Corbin, 275 Ky. 808, 122 S. W. (2d) 798, and Roach v. City of Columbia, supra. The contentions are without merit.

Appellants next contend that the 1951 Act violates Federal and State due process provisions because, (1) authorizing charges for use of an existing fully paid for sewerage system, (2) authorizing sewerage charges to be based upon the amount of water entering the premises, irrespective of the use of the water, and (3) authorizing making an owner of premises liable for water furnished to a tenant. We consider those contentions in order. It is first contended the respondent city may not now make a charge for the use of a presently existing sewer system where no such charge for such sewer use has been heretofore made. No cases are cited by appellants in support of that position. We find any number of well-reasoned cases to the effect that such charges may be constitutionally made.

Section 250.120 specifically provides that such charges for sewerage system use shall be made "regardless of whether or not the services of the (sewerage) system shall previously have been rendered without charge therefor by the previously existing . . . sewerage system . . . and regardless of how the acquisition of such system shall have been financed," etc. This exact question was before the Court and was ruled in Carson v. Sewerage Commissioners of City of Brockton, 175 Mass. 242, 56 N. E. 1, 48 L. R. A. 277; Id., 182 U. S. 398, 21 S. Ct. 860, 45 L. Ed. 1151, Benson v. Andalusia, 240 Ala. 99, 195 Sou. 443, City of Wichita Falls v. Landers, Tex. Civ. App., 291 S. W. 696, Opinion of the Justices, 93 N. H. 478, 39 Atl. (2d) 765, Grim v. Village of Lewisville, 54 Ohio·App. 270, 6 N. E. (2d) 998, and Freeman v. Jones, 189 Ark. 815, 75 S. W. (2d) 226. Authorities upholding the right of municipalities to levy a charge for the use of the city sewerage system could be multiplied. But the above are sufficient. The rule of the above cited cases is that the original construction of a sewerage system does not bind the city to forever maintain it from general taxation, nor may it be implied that a citizen may forever use the sewerage system without charge, and that a charge may therefore be made for the use of the sewerage facility, "a benefit distinct from that originally conferred by building it." The respondent city by heretofore maintaining its sewerage system through taxation did not impliedly or otherwise bind itself never to charge for its use. Such sewerage charges are but charges for a service rendered. They are in no sense taxes. See cases last above cited, and Am. Juris. Taxation, Sec. 3, p. 35, Sec. 16, p. 48, and Louisville & J. County Met. Sewer Dist. v. Jos. E. Seagram & Sons, 307 Ky. 413, 211 S. W. (2d) 122, 4 A. L. R. (2d) 588. The 1951 Act in Section

250.120 makes it the mandatory duty of a city which issues such revenue bonds "to fix and maintain rates and make and collect charges for the use and services of the (sewerage) system," etc. And it is of no consequence whatever that the city had theretofore exacted no service charge for the use of such system. This contention is without merit and must be denied.

Appellants' argument, without citation of authority, that to base the charge for the sewer service upon the quantity of water used upon the premises is unreasonable, is wholly without merit. This contention again overlooks the basic fact that [354] the water and sewerage systems are now one. Appellants' argument is that some customers may use large quantities of water which never reach the sewer. A reasonable provision for such a contingency appears in the one exception in Section 3 of Ordinance 2396. Under that exception (3000 cubic feet per month for industrial purposes) a large commercial water user pays a sewerage charge based only on the amount of water discharged into the sewerage system. The reasonableness of the method of fixing the rate used in the instant ordinance has been widely studied by municipal engineers who have written much upon the subject. See, "Fundamental Considerations in Rates and Rate Structures for Water and Sewage Works," Ohio State Law Journal, Spring, 1951; "Sewer Rentals," Bulletin No. 7 of American Public Works Association, Chicago, 1950; "Sewer Rentals in Pennsylvania Municipalities," Pennsylvania State College, 1949; "Sewerage Service Charges," by Samuel Robert Wright, College Station, Texas, 1947. And see also, Michelson v. City of Grand Island, 154 Neb. 654, 48 N. W. (2d) 769, State v. City of Miami, 157 Fla. 726, 27 Sou. (2d) 118, Houchins v. City of Beckley, 127 W. Va. 306, 32 S. E. (2d) 286, 288, and Sharp v. Hall, 198 Okla. 678, 181 Pac. (2d) 972, where the instant method of fixing such rates was considered and held reasonable. These contentions are without merit and must be denied.

Appellants next contend that the 1951 Act and Ordinance 2396 are invalid in violation of due process provisions for purporting to make the owner of premises occupied by a tenant liable with such tenant for water and sewerage services rendered on the owner's premises. Section 250.140 of the 1951 Act provides the combined services "shall be deemed to be furnished to both the occupant and owner of the premises receiving such service," and that the city may "sue the occupant or owner, or both," in a civil action to recover "any sums due for such services." Section 8 of Ordinance 2396 incorporates that statutory provision. This contention seems to be based upon appellants' argument that the above provision imposes "a special assessment on the owner without giving such owner any notice of the assessment or any opportunity to be heard with respect to the alleged benefit that he will receive," etc. Appellants cite Etheredge v. City of Norfolk, 148 Va. 795, 139 S. E. 508, 55 A. L. R. 781.

The General Assembly had the right by statute to so authorize, and the city may so provide by ordinance. An owner of real estate which has sewer and water connections has a valuable right not possessed by owners of other real estate not so connected. And such an owner is charged with notice of the statute and ordinance. The remedy against the owner is purely personal and the water and sewerage charges are not made a lien on the real estate. The obvious theory is that the obligation of the owner of the real estate rests upon a contract implied from the fact that he connects his real estate with the water and sewerage facilities of the city and permits the occupant to so use the real estate and such facilities. The owner of premises has no absolute right to have the city's water and sewerage services connected into his premises with no regard for the city's charges and regulations controlling the use of such facilities. And the city has the right by ordinance to prescribe reasonable terms upon which the owner may have such services connected into his property. We think the statute and ordinance are reasonable. They do not violate due process. Similar statutes and ordinances have been held constitutional and valid in City of East Grand Forks v. Luck, 97 Minn. 373, 107 N. W. 393, 6 LRA (N.S.) 198, Prudential Co. of Minnesota v. City of Minneapolis, 202 Minn. 70, 277 N. W. 351, Pfau v. City of Cincinnati, 142 Ohio St. 101, 50 N. E. (2d) 172, City of Pittsburgh v. Brace, 158 Pa. St. 174, 27 Atl. 854, and other cases. We approve the reasoning and conclusion of those cases.

In the Virginia case of Etheredge v. City of Norfolk, supra, relied on by appellants, the court's conclusion was based upon "the absence of a state legislative enactment," such as our 1951 Act. That case therefore is not apposite. The instant sewerage and water service charges do not partake at all of the nature of a special [355] assessment against real estate nor of a special assessment against the owner of any real estate. As above noted they are not a tax. We have held above that they are merely service charges for water and sewerage services rendered by the respondent city. This contention is without merit.

It is next contended by appellants that the 1951 Act (Section 250.120) and Ordinance 2396 violate the provisions of the State and Federal Constitutions because the city is "authorized to discontinue water service upon any failure to pay within a reasonable time the charges fixed," etc. The above provision of the 1951 Act and of the ordinance is contended by appellants to be arbitrary and unreasonable. In this contention appellants again ignore the fact that the city has combined its waterworks and sewer operations. They also ignore Section 250.120 specifically authorizing the respondent city to use this method of enforcing and collecting its charges for its combined water and sewerage services. These provisions are widely held to be constitutional and reasonable. State v. City of Miami, 157 Fla. 726, 27 Sou. (2d) 118, Miami Water Co. v. City of Miami, 101 Fla. 506, 134 Sou.

592, Gatton v. City of Mansfeld, 67 Ohio App. 210, 36 N. E. (2d) 306, Michelson v. City of Grand Island, supra, Patterson v. City of Chattanooga, 192 Tenn. 267, 241 S. W. (2d) 291, Dodd v. Atlanta, 154 Ga. 33, 113 S. E. 166, 28 A. L. R. 465, Sharp v. Hall, supra, and cases cited in those opinions. See also annotation, 28 A. L. R. 472. We approve those cases in this respect.

Appellants rely upon McMahon v. Baumhauer, 234 Ala. 482, 175 Sou. 299, which reached a contrary conclusion. But we are not willing to follow that case and to thus depart from the great weight of authority. And in that case it does not appear that there was any legislative authority to combine waterworks and sewerage systems and to operate them as a unit of municipal services. The Alabama court very clearly seems to have overlooked the interdependence of the two systems. We think the two services are so closely interlocked that neither can be effective without the other. This contention must be denied.

It is next contended by appellants that the proposed revenue bonds would be invalid because Ordinance 2397 authorizes respondent city to call for payment and redemption prior to maturity, certain of said bonds which would mature in the years 1967 to 1982, upon payment of a specified premium. The heart of this contention is that the possible payment of such call premium was not submitted to the voters at the special election. Appellants place their entire reliance upon McNichols v. City and County of Denver, 123 Colo. 132, 230 Pac. (2d) 591.

Of course the respondent city is not obligated to call any bonds before maturity and the contingency may never arise. But it may desire to call some of such bonds before maturity. In this contention, however, appellants seem to overlook that Section 250.080 provides that these particular revenue bonds may provide for redemption, "with or without premium, and at such times and upon such conditions as may be provided *by the governing body of the city, town or village* or sewer district." The statute permitting a provision for a call before maturity does not require the submission of such a minor detail to the voters. Section 250.070 provides for approval of the proposed revenue bond issue by four-sevenths of the qualified voters, at an election which "shall be called, notice thereof given . . . and the result thereof canvassed and declared in accordance with sections 95.145 and 95.155." Those last numbered sections relate to general obligation bonds but set out no requirement that the election notice specify any details as to the covenants in the bonds proposed to be issued. Of course certain major matters must be in the election notice such as amounts, purpose, etc. But details such as dates, maturities, and whether callable are by this statute left to the governing city body. Redemption privileges are for the city's protection and general tax money may not be used for redemption privileges in the calling of these revenue bonds.

In Dodds v. Kansas City, 347 Mo. 1193, 152 S. W. (2d) 128, 131, we considered Kansas City's charter in connection with a bond issue upon

the credit of income from its **[356]** water department where the city had inserted a call provision at 103. We there said that " . . . where there is an express grant to a city without the method or details exercising such power prescribed, the City Council has authority to exercise the power granted it in any reasonable and proper manner." And in State ex rel. City of Fulton v. Smith, 355 Mo. 27, 194 S. W. (2d) 302, 305, where we sustained the city's right to issue revenue bonds to extend its combined water and electric light works we said that, "The constitutional grant to issue and sell revenue bonds carries with it by implication such other necessary powers as are needed to carry the granted authority into effect." But as to these instant bonds, redemption with or without premium is specifically authorized by the statute. The major questions before the court and ruled in the Colorado case, McNichols v. Denver, supra, were whether the off-street parking bonds there considered were revenue bonds or general obligation bonds, and whether the procedure set up violated the city charter. The Court ruled those two major questions, and in the course of the opinion expressed the view now contended for by apellants. But we think the facts of that case distinguish it from the instant case. And too, here there is express statutory authority for redemption prior to maturity with or without notice and the notice of election and submission of the question to the voters in this case complied in all respects with all statutory requirements. The contention is overruled.

Appellants finally contend that Ordinance 2397 is invalid for requiring the city to maintain for its combined waterworks and sewerage operations six separate accounts for maintenance, sinking fund, depreciation, reserve, replacement and surplus. It is stated in appellants' brief that maintenance of such accounts will result in excessive charges but not one single reason is stated for such assertion. And no authority is cited. Section 250.160 authorizes such separate accounts. They clearly are in conformity with the standard accounting and business practices of those engaged in furnishing such utility services. The provisions of Section 10 of the ordinance follow the authorization of the statute. The amounts required by the ordinance to be maintained in the separate accounts are entirely reasonable considering the value of the physical property in question and the face amount of the proposed bond issue. Those amounts impose no tax burden and do not involve the city's general revenues. The maintenance of those amounts in those accounts is sound business policy, is in the public interest, does not appear to be disproportionate to the necessities of the instant situation and it does not at all appear that excessive rates will result therefrom. See Utah Power & Light Co. v. Ogden City, 95 Utah, 161, 79 Pac. (2d) 61, Rankin v. Chester Municipal Authority, 165 Pa. Super. 438, 68 Atl. (2d) 458, and Wolgamood v. Village of Constantine, 302 Mich. 384, 4 N. W. (2d) 697.

We may not here pass on the judgment of the city's governing body in fixing the rates to be charged or the amounts which may be proper to be maintained in the separate accounts, so long as the ordinance appears reasonable in those respects. The respondent city has the authority to engage in these activities for the above public purposes and this Court will not interfere with the discretionary and contractual rights of respondent city so long as they appear to have been reasonably exercised. No fraud or abuse of discretion has been charged.

The judgment is affirmed. All concur.