FRANK TURSELLINO et al., Plaintiffs, *v.* DOMINICK PADUANO, as Commissioner of Water Supply, Gas and Electricity, et al., Defendants.

Supreme Court, Special Term, Kings County, October 17, 1951.

*John P. McGrath, Corporation Counsel* (*W. Bernard Rich-land* and *Pauline K. Berger* of counsel), for defendants.

*Bennett E. Aron* for plaintiffs.

BAAR, J. This is a motion by defendants to dismiss the complaint either pursuant to subdivision 5 of rule 106 of the Rules of Civil Practice or for summary judgment under rule 113, or that the court pursuant to rule 212 in the exercise of its discretion refuse to take jurisdiction, and dismiss the complaint.

In a joint complaint wherein each of the two plaintiffs pleads an asserted cause of action against the City of New York and certain of its officials, a judgment is sought declaratory of rights and for incidental injunctive relief, based on the imposition of charges for the use of the defendant city's sewer system. The constitutionality of the statutes involved is assailed.

The removal of human and industrial waste and the treatment and sterilization of it is one of the most important services rendered in a community. It must be given front rank with other facilities furnished by government, without which the warp and woof of the fabric which makes up the pattern of life in a complex municipality would be miserably and unutterably threadbare. It is as necessary for simple creature existence as air, food and water. It has been said, perhaps with some flippancy yet with considerable truth, that civilization has progressed as the plumbing craft has advanced; and the fur-

nishing to a people of an adequate and proper water supply and a sewage disposal system certainly fits into that category. Hence it is not surprising to learn that the City of New York owns and operates a sewer system consisting of 4,600 miles of underground pipe lines and thirteen sewage treatment and disposal plants, the assessed value of which is over $220,000,000, though its actual value is probably much greater; that the city's sewer system carries away over one billion gallons of sewage daily, of which four hundred and eighty-two million gallons are treated and disposed of by sewage treatment and disposal plants. The cost of constructing sewage and disposal plants is the one part of the system which has always presented a financial problem because it is so tremendous.

In addition to the inherent basic necessity of an adequate sewer system hereinabove discussed, a legal obligation has been placed on the municipality by the Interstate Sanitation Commission, a tri-State body created by the Legislatures of the States of New York, New Jersey and Connecticut. In 1948 a proceeding was instituted by that body to compel the city to adopt and carry out a plan for discontinuing the discharge of raw sewage into the waters surrounding the city. After proceedings, in accordance with law, the commission issued an order (1) fixing December 31, 1959, for the completion of a sewage treatment system in accordance with standards specified by the tri-State commission; (2) requiring the city to undertake and carry out the first stage of a plan submitted by it which would take five years to complete at an estimated cost of slightly less than $95,000,000; and (3) requiring the city to submit to the commission prior to February 1, 1954, a program of proposed construction to complete the pollution abatement program no later than December 31, 1959. It is estimated that the complete ten-year program will cost approximately $250,000,000. Because of the vastness of the program, the lack of a sufficient margin of debt-incurring power to finance it by bonds payable from assessments or from real estate, and the requirements of the city to comply with the timetable established by the Interstate Sanitation Commission, the city was compelled to avail itself of the " sewer rent " method of financing which has been authorized since 1929 (L. 1929, ch. 678) by subdivision 26 of section 20 of the General City Law. Under the framework of the laws involved the surplus sewer rental receipts, after payment of current maintenance and annual debt service charges, may be used only for the construction of sewage disposal and treatment plants and intercepting sewers and may not be put

in the general fund of the city. (Local Laws, 1950, No. 67 of City of New York; Administrative Code of City of New York, § 82d9–9 1; Local Laws, 1950, No. 102 of City of New York.)

Out of this situation arises the present litigation instituted by the two plaintiffs herein.

In the first cause of action the plaintiff Tursellino alleges that he is a licensed manufacturer of ice, operating a plant in the borough of Queens in a building on a substantial parcel of land, equipped with expensive machinery, having an aggregate value in excess of $400,000; he alleges further than in the manufacture of ice large amounts of water are used and that about 95% of the water purchased from the City of New York is consumed in the manufacture of ice and the remainder is discharged into the common sewer of the City of New York; that he produces about 100 tons of ice a day. He then alleges the enactment of the various statutes by the State Legislature and the city council and the adoption by the board of estimate of the City of New York of regulations pursuant thereto relating to sewer rents and by virtue of which sewer rents are authorized, levied, collected and administered; that in April and September, 1949, he executed a first and second mortgage to the Seamen's Bank for Savings in the city of New York and the Frick Company for $60,000 and $113,900, respectively; that said mortgages were immediately thereafter recorded, and that subsequently the City of New York imposed a charge for sewer rents against the premises of the plaintiff which became a lien on January 1, 1951, prior and superior in legal effect to the mortgages above referred to. He then alleges further that the sewer service charge is not a tax; that the purported lien is not a tax lien and not entitled to priority; that the statutory enactments, both State and municipal, are unconstitutional and void insofar as they purport to grant the municipalities the right to establish a lien for sewer rents prior and superior to existing mortgages, in violation of section 10 of article I of the United States Constitution; that the creation of a lien for sewer rents is not a valid exercise of the State's taxation power, and is an unconstitutional taking of property without due process of law in violation of the Fourteenth Amendment to the United States Constitution and of section 6 of article I of the New York State Constitution; that the attempt to create a prior lien, as above set forth, is an impairment of the obligation of contract, here specifically the mortgage contracts, in violation of section 10 of article I of the United States Constitution, and that the sewer service charge is unreasonable, inequitable, unlaw-

ful and unjust and far in excess of the benefits conferred upon the plaintiff; that the plaintiff will be caused irreparable damage and injury in that he will be deprived of his property without due process of law since the sewer rent is one third of the amount of the water bill, whereas only about 5% of the water purchased by the plaintiff enters the common sewer from the premises of the plaintiff, and finally, that he has no adequate remedy at law.

The plaintiff, Supreme Coal & Ice Corp., in the second cause of action set forth in the complaint makes substantially the same allegations as does Tursellino, the coplaintiff, except that there is no averment concerning or involving any previously existing mortgage liens against its property.

As stated at the outset defendants presently attack the complaint and move to dismiss it as legally insufficient on its face pursuant to rule 106, or in the alternative move for summary judgment under rule 113 on the ground that the complaint is insufficient when tested by affidavits, or further, alternatively, for a dismissal under rule 212 appealing to the discretion of the court since there is no demonstrated necessity for a declaration of rights and that the parties have other and adequate forms of relief to which they should resort.

The court is most grateful for the assistance received through the exhaustive research task to which counsel for both sides dedicated themselves. The briefs submitted, the pleadings and the motions addressed thereto raise several questions.

First of all, does an action for declaratory judgment lie? Although rule 212 vests discretionary power in the courts, it is well settled that where the constitutionality of a statute is involved the remedy of relief by declaratory judgment is especially applicable. (*Dun & Bradstreet, Inc.*, v. *City of New York*, 276 N. Y. 198; *Commission of Public Charities* v. *Wortman*, 255 App. Div. 241; *Board of Educ.* v. *Van Zandt*, 119 Misc. 124, affd. 204 App. Div. 856, affd. 234 N. Y. 644.)

Defendants' motion under subdivision 5 of rule 106 admitting all the allegations of the complaint, puts in issue the constitutionality of the several enactments above set forth.

Plaintiff Tursellino takes the position that the creation of a lien senior to the mortgages executed in favor of the Seamen's Bank and the Frick Company is an impairment of the obligation of contract in violation of section 10 of article I of the United States Constitution. His argument in this respect assumes the recognition of the obligation to pay the sewer rental charge if he accepts the service. It is important to note

that the mortgagees are not parties to the action. Under such circumstances plaintiff has no standing to raise questions which do not directly affect him, since whether it is a lien senior to the mortgages does not concern him. (*People ex rel. Durham Realty Corp.* v. *La Fetra,* 230 N. Y. 429, 440; *Ivory* v. *Edwards,* 278 App. Div. 359.) In the recently decided *Ivory* case last cited, Presiding Justice PECK stated the rule succinctly, as follows: " Declaratory judgments serve a useful purpose in declaring rights at a stage and in a forum more favorable to a party who is the object of some administrative regulation than a criminal proceeding or other enforcement proceeding, but it is undesirable to carry that view to the length of permitting a party to rush in and seek a declaratory judgment before his case is cognizable by an administrative agency *and before any precise issue applicable to him can be drawn."* (P. 361; italics supplied.)

However, plaintiff and his corporate coplaintiff come squarely within the main purposes of the statutes providing for sewer rentals and pose the question of the constitutionality of the levy itself. They assert that by reason of the several objections hereinafter set forth they have been deprived of their property without due process of law.

Charges for water have been held valid levies (*Security Bldg. & Loan Assn.* v. *Carey,* 259 App. Div. 42, affd. 286 N. Y. 646; *Provident Inst. for Sav.* v. *Mayor & Aldermen of Jersey City,* 113 U. S. 506), and so have sewer service fees (*Carson* v. *Brockton Sewerage Comm.,* 182 U. S. 398). Since the social aspects of a water supply and sewer service system are analogous, and since enabling legislation of both follows the same pattern, the legal aspects of rental charges for such services are *pari passu.*

The stress of both plaintiffs' argument is not only that particular charges fixed by the commissioner are unreasonable and that the method is unreasonable, but even more important that any charge at all is unreasonable. But as indicated in the *Carson* case (*supra*), there is no element of deprivation here or even of taxation but merely one of contract into which the plaintiffs might or might not enter. As in the case of water service they could use the sewer or not, as they chose. If they used it, they were required to pay the rental fixed by the municipal authorities.

The plaintiffs in their brief argue also that the city might have chosen a different and better method for raising the funds necessary to defray the cost of constructing sewage treatment and disposal plants, citing the system used in Cleveland, Ohio,

and other municipalities. But the plaintiffs concede that the "City is practically estopped from levying additional taxes because of tax limitation laws. So the only course seemingly left open to the City was to take advantage of the Sewer Rental Law, declare the sewer and sewage disposal service a public utility, and then charge the beneficiaries of this service the cost of the service." In any event, this is a question of legislative wisdom in the choice of a plan and not of its legality which alone is the subject of judicial interpretation.

Plaintiffs assert further that the dollar yield of the rent charge will be far in excess of what is required contrary to the limited purposes of the enabling statutes. The allegation in this respect is conclusory, is unsupported by anything in the pleadings, and is prophesy rather than fact. Such is the situation also to some degree with reference to the analysis and study submitted in the answer of the city although it cannot be gainsaid that the city's position is more amply supported than is that of the plaintiffs. But soothsaying is not the touchstone by which the constitutionality of a statute is to be determined. The question is whether the law is designed to accomplish a legitimate purpose. When so tested, the answer with reference to the legislation here under consideration must be in the affirmative. The court can find no infirmity in the statutes on any of the grounds raised by plaintiffs so far as their constitutionality is concerned.

The complaint also questions the fairness and reasonableness of the sewer rental rate fixed by the statute, to wit, one third of the water tax, in view of plaintiff Tursellino's alleged consumption of 95% of the water as an industrial user with a return of only 5% of the water to the sewer; and the plaintiff Supreme Coal and Ice Corporation takes the position that one sixth instead of one third of the water tax would be a fair and reasonable basis for fixing the sewer rental charge. The allegations of the pleading have been outlined above in gross, but it is now necessary to consider some of them in detail.

Paragraphs 9, 10, 11 and 12 of the first cause of action allege the enactment of the various statutes and laws which empower the City of New York to levy and administer the sewer rentals, including the enforcement measures to insure collection. They are incorporated in the complaint "by reference and made a part" thereof. By paragraph 25 they are realleged and made part of the second cause of action. Paragraphs 23 and 41 of the complaint allege that plaintiffs respectively have no adequate remedy at law.

Pursuant to the statutes referred to, the commissioner of water supply, gas and electricity is given the power to make " rules and regulations as may be necessary to carry out the provisions " of the law, subject to the approval of the board of estimate. (Administrative Code, § 82d9–9.1, subd. c.) The laws, rules and regulations together provide, among other things, that the sewer rental or charge shall be one third of the amount of the charges for water supplied to the various premises within the city of New York. Special provision is made for industrial users whose manufacturing processes use up the water and return only the unconsumed part to the sewer. Included among them are ice manufacturers, such as are here involved. The commissioner is authorized to make such investigation as he deems necessary in order to find a proper basis for the rental charge to be made to industrial users. He may hold hearings, subpœna witnesses and direct the production of such books and papers as may be necessary. Provision is made for the user to be notified after a determination has been made by the commissioner of the basis for the sewer rent. The occupant or user then has ten days within which to demand a hearing, which hearing must be accorded to him, and after which the commissioner shall notify the user of his final determination. His determination may then be reviewed under article 78 of the Civil Practice Act, which has been held to constitute an adequate remedy at law (*New York State Elec. & Gas Corp.* v. *Maltbie,* 266 N. Y. 521). It may well be, although it is not so decided here, that the plaintiff has other remedies at law.

In any event, the procedures outlined above insure plaintiff an opportunity to be heard. As stated in the case of *People ex rel. Broadway & 96th St. Realty Co.* v. *Walsh* (203 App. Div. 468; cited with approval by the Court of Appeals in *Matter of Towers Management Corp.* v. *Thatcher,* 271 N. Y. 94), at page 475: " This makes a clear and orderly procedure, whereby any person aggrieved may first appeal " to the administrative body " and then may test its action as in that case by certiorari."

Thus, the allegation of the complaint that the plaintiff has no adequate remedy at law is completely negated. Under such circumstances the court should not take jurisdiction. As was said by Chief Judge CARDOZO in *Newburger* v. *Lubell* (257 N. Y. 383, 386): " A suit for a declaratory judgment is a discretionary remedy (Civ. Prac. Act, § 473), which may be withheld if existing forms of action are reasonably adequate (Rules Civ. Prac. rule 212)." (See, also, *Leary* v. *Leary,* 253 App. Div.

790, and *Casanave* v. *Robbins*, 262 App. Div. 873.) It is undesirable to permit a party to rush in and seek a declaratory judgment before his case is cognizable by an administrative agency. (*Ivory* v. *Edwards, supra.*)

Furthermore, in an action for declaratory judgment special attention must be given to the prayer for relief.

Rule 211 of the Rules of Civil Practice specifically provides: "*Prayer for relief.* The prayer for relief in the complaint shall specify the precise rights and other legal relations of which a declaration is requested and whether further or consequential relief is or could be claimed. If further relief be claimed in the action, the nature and extent of such relief shall be stated."

In the complaint the prayer for relief asks that the relevant statutes be declared unconstitutional and prays further for incidental injunctive relief. It does not seek a determination of the issues as to whether plaintiffs' sewer rent should be 5% or some other percentage of the standard sewer rent of one third of the water tax.

Even though there still remain in the complaint sufficient allegations to state a cause of action on whether the standards laid down by the statute have been applied properly or fairly, an issue which the plaintiffs have a right to raise, it can not be litigated in this action for declaratory judgment. This is especially so since the plaintiff has an adequate remedy at law and the prayer of the complaint for relief does not encompass the request for judgment on this issue.

The motion to dismiss the complaint under subdivision 5 of rule 106 is granted.

Settle order on notice.