CITY OF NORTH MUSKEGON v. BOLEMA
CONSTRUCTION COMPANY, INC.

1. MUNICIPAL CORPORATIONS—SEWERS—LATERALS.

A lateral, consisting of sewer pipe and fittings running from a sewer main to the property line of the user, is a necessary part of a sewerage system and as such is a service or facility within the meaning of revenue bond act (CL 1948, § 141.101 et seq.).

2. SAME—SERVICE CHARGE FOR CONNECTING LATERAL TO MAIN LINE.

The fact that there is a nonrecurring charge for making a connection between a lateral sewer and main line does not detract from the fact that the connection is a service or facility which a municipal corporation must provide under revenue bond act and ordinance adopted thereunder (CL 1948, § 141.101 et seq.; North Muskegon Ordinance No 201).

3. SAME—DISCRETION OF OFFICERS—JUDICIAL INTERFERENCE.

The courts will not interfere with the discretionary acts of municipal officers conducting an activity for a public purpose in which the municipality is authorized to engage, except as there is a malicious intent, capricious action, or

REFERENCES FOR POINTS IN HEADNOTES

[2] 38 Am Jur, Municipal Corporations § 565.
[3, 4] 37 Am Jur, Municipal Corporations § 263.
[4] As to basis of sewer tax, see 17 Am Jur, Drains and Sewers §§ 67, 68.
[5] 14 Am Jur, Costs §§ 23, 91.

corrupt conduct, something which shows the action complained of did not arise from an exercise of the judgment and discretion vested by law in such officers.

4. SAME—DISCRETION OF OFFICERS—SEWER CONNECTION PERMIT FEE. Imposition of $100 permit fee for privilege of connecting lateral sewer from house to main line in alley *held*, within sound discretion of city officials as to amount, when considered in relation to objectives of program in maintaining the sewer system and paying off bonds in the manner required by statute, notwithstanding defendant company made their own connection between the sewer main to their property line and ordinance provided that city should furnish all labor and material necessary to connect such sewer main with the premises at the nearest property line (CL 1948, § 141.101 *et seq.;* North Muskegon Ordinance No 201).

5. COSTS—MUNICIPAL CORPORATIONS—CONSTRUCTION OF STATUTE AND ORDINANCE—SEWER CONNECTION PERMIT FEE. No costs are allowed in action by city to collect sewer connection permit fee, where the construction of a statute and an ordinance is involved (CL 1948, § 141.101 *et seq.;* North Muskegon Ordinance No 201).

Appeal from Muskegon; McDonald (Archie D.), J., presiding. Submitted October 8, 1952. (Docket No. 23, Calendar No. 45,549.) Decided January 5, 1953.

Action by City of North Muskegon, a municipal corporation, against Bolema Construction Company, Inc., a Michigan corporation, and another to recover amount of permit fee for a sewer connection. Judgment for defendants on appeal to circuit court. Plaintiff appeals. Reversed and judgment ordered entered for plaintiff.

*Francis G. Barlow,* for plaintiff.

*Charles A. Larnard,* for defendants.

SHARPE, J. This is an action to recover the sum of $100 for a permit fee for a sewer connection. The

essential facts are as follows: Prior to March 15, 1948, plaintiff city operated its combined water and sewer systems as a department of public service by virtue of PA 1933, No 94.* On the above date the city of North Muskegon adopted ordinance No 201, for the purpose of improving, enlarging and extending its water-supply and sewage-disposal system. This ordinance authorized the issuance of revenue bonds in the amount of $130,000 for the purpose of paying the cost of the project, and for refunding old revenue bonds. The ordinance provides that the city must set up an operation and maintenance fund, a bond and interest redemption fund, a water main contract fund, and a replacement fund. Prior to the adoption of the ordinance, the sewer department had been operating at a loss, despite the fact that there had been 2 or 3 increases in sewer rates.

In 1950, the average cost of making sewer connections on the short alley jobs was $57 per connection and the average cost on longer jobs was $78 per connection. In 1948, defendant company built a house on Mills street in the city of North Muskegon and on or about September 1, 1948, made their own sewer connection from the sewer main to their property line in the alley adjacent to the house. Thereafter, plaintiff city billed defendants' company $100 for the sewer connection charge. Upon refusal to pay, the city began an action before the justice of the peace and thereafter appealed the cause to the circuit court of Muskegon county. The cause came on for trial and at its conclusion the court entered judgment for defendant. The judgment recited:

"The provisions of the City Ordinance, No 201, of plaintiff, requiring payment of $100 for making sewer connection to the premises of defendant, is oppressive, discriminatory, unreasonable, prohibi-

---

* CL 1948, § 141.101 *et seq.* (Stat Ann and Stat Ann 1947 Cum Supp § 5.2731 *et seq.*).—Reporter.

tive, and, so far exceeds, the necessary or probable expense of issuing the license and regulation thereof, that the same is void, and the court further finds that the revenue therefrom is out of proportion of any reasonable regulatory fee therefore void."

Plaintiff appeals and urges that by virtue of PA 1933, No 94, as amended, and Ordinance No 201, it is empowered to make the $100 charge for furnishing a service to the property owners.

Defendant company urges that the charge of $100 is a license fee and so disproportionate in amount as to make it unreasonable.   The act in question provides among other matters:

Section 2 of said act (CL 1948, § 141.102 [Stat Ann 1949 Rev § 5.2732]), provides:

"This act shall be construed as cumulative authority for the exercise of the powers therein granted. * * * The powers conferred by this act shall not be affected or limited by any other statute or by any charter, except as otherwise herein provided."

Section 3 of said act (CL 1948, § 141.103 [Stat Ann 1947 Cum Supp § 5.2733]), provides as follows:

"Sec. 3.   Whenever used in this act, except when otherwise indicated by the context: * * *

"(e) The term 'rates' shall be construed to mean the charges, fees, rentals and rates which may be fixed and imposed for the services, facilities and commodities furnished by any public improvement."

Section 21 of said act (CL 1948, § 141.121 [Stat Ann 1949 Rev § 5.2751]), provides as follows:

"Sec. 21.   Rates for services furnished by any such public improvement shall be fixed precedent to the issuance of the bonds.   Such rates shall be sufficient to provide for the payment of the expenses of administration and operation and such expenses for the maintenance of the public improvement as may be necessary to preserve the same in good repair and

working order; to provide for the payment of the interest upon and the principal of all bonds payable therefrom, as and when the same become due and payable, and for the creation of any reserve therefor as required in the ordinance; and to provide for such other expenditures and funds for the public improvement as the ordinance may require. Such rates shall be fixed and revised from time to time by the governing body of the borrower so as to produce these amounts, and the borrower shall covenant and agree in the ordinance authorizing the issuance of such bonds and on the face of each bond to maintain at all times such rates for services furnished by such public improvement as shall be sufficient to provide for the foregoing."

Sections 14, 19 and 24 of the ordinance read as follows:

"Sec. 14. Whenever a city sewer is available in a street, alley or right-of-way adjacent to any premises, then the sanitary sewage therefrom shall be disposed of through the city's sewage disposal system and the owner of such premises at his own expense shall cause the same to be connected with the city sewer.

"For each connection hereafter made to a city water main or to a city sewer, there shall be paid to the city the sum of one hundred dollars in advance. Upon such payment the city shall proceed to make the connection and shall furnish all labor and material necessary to connect such water main or sewer, as the case may be, with the premises at the nearest property line. In cases where an extraordinary amount of labor and material will be required, then the above charge shall be increased to compensate the city for the extra cost. * * *

"Sec. 19. The rates hereinbefore established are estimated to be sufficient to provide for the payment of the expenses of administration and operation of the system and such expenses for the maintenance thereof as may be necessary to preserve the same

in good repair and working order; to provide for the payment of the interest upon and the principal of all bonds payable therefrom, as and when the same shall become due and payable, and for the creation of a reserve for the payment of principal and interest as required in this ordinance; to provide for the payment of the quarterly instalments of principal and interest due under a certain contract dated May 31, 1947 for the purchase of a water main from the city of Muskegon; and to build up a fund for replacements to the system as provided in this ordinance. Rates shall be fixed and revised from time to time by the council so as to produce the foregoing amounts, and the city covenants and agrees to maintain at all times such rates for services furnished by the system as shall be sufficient to provide for the foregoing.   *   *   *

"Sec. 24.   *   *   *   The city of North Muskegon hereby covenants and agrees that at all times while any of the bonds of this issue shall be outstanding, it will maintain such rates for services furnished by said water supply and sewage-disposal system as shall be sufficient to provide for the payment of the expenses of administration and operation of said system and such expenses for the maintenance thereof as may be necessary to preserve the same in good repair and working order; to provide for the payment of the interest upon and principal of all bonds payable therefrom as and when the same become due and payable, and for the creation of a reserve therefor as required in said ordinance; to provide for the payment of the quarterly instalments of principal and interest due under a certain contract dated May 31, 1947 for the purchase of a water main from the city of Muskegon; and to build up a reserve as provided in said ordinance for the replacements to said system which may become necessary from time to time. Rates shall be fixed and revised from time to time by the council of said city so as to produce the foregoing amounts."

We note that section 3 (e) of the act provides:

"(e) The term 'rates' shall be construed to mean the charges, fees, rentals and rates which may be fixed and imposed for the services, facilities and commodities furnished by any public improvement."

In our opinion a lateral consisting of sewer pipe and fittings running from a sewer main to the property line of the user is a necessary part of a sewerage system and as such is a service or facility within the meaning of the act. The fact that there is a nonrecurring charge for this connection does not detract from the fact that the connection is a service or facility, which the department of public service must provide.

Plaintiffs also urge that the fixing of the sewer connections charge at $100 was a valid exercise of discretion by the city officials and authorized by the act and ordinance in question for the reason that in order to meet the obligations required by the bonded indebtedness, the city only had recourse to water rates, sewer rates, hydrant rentals and the sewer and water connections. In *Wolgamood v. Village of Constantine*, 302 Mich 384, we had occasion to discuss the power of courts to interfere with the discretionary acts of city officials. We there said:

"Where a municipality has the power to engage in an activity for a public purpose, the courts will not interfere with the discretionary acts of its municipal officials. * * *

"In order to warrant the interposition of a court of equity in municipal affairs, there must be a malicious intent, capricious action or corrupt conduct, something which shows the action of the body whose acts are complained of did not arise from an exercise of judgment and discretion vested by law in them."

In the case at bar the city charter [chapter 2, § 1] provides:

"The city  *  *  *  may do any and all things needful, necessary or proper to furnish, supply, regulate and control water supply, sewage disposal, sanitation, and sanitary control within or without the boundaries of said city, upon such terms and conditions as the council shall decide."

In our opinion the amount of the charge is within the sound discretion of the city officials, especially when considered in relation to the objectives of the program in maintaining the system and paying off the bonds in the manner required by statute. The judgment is reversed and a judgment will be entered in the circuit court of Muskegon county in favor of plaintiff city in the amount of $100 and interest. No costs, as the construction of a statute and ordinance is involved.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSHNELL, BOYLES, and REID, JJ., concurred.