(No. 32874.

DONALD G. SPALDING, Appellant, *vs.* THE CITY OF
GRANITE CITY, Appellee.

*Opinion filed June 26, 1953.*

RANDALL ROBERTSON, of Granite City, for appellant.

FRED P. SCHUMAN, of Granite City, for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is a direct appeal from an order of the circuit court of Madison County entered in an action for declaratory judgment on March 30, 1953, wherein sections 60-12 through 60-18 of the Revised Cities and Villages Act were held to be constitutional. Ill. Rev. Stat. 1951, chap. 24, pars. 60-12 to 60-18.

The plaintiff, a resident of the former city of Nameoki, now a part of Granite City, a property owner, taxpayer, and a prospective user of the sewer system, filed this complaint seeking a declaratory judgment to determine the constitutionality of these sections by which the city of Granite City seeks to finance an extension of its sewer system. The complaint alleged that pursuant to the requests of the residents and property owners of the Nameoki area of the city of Granite City, the council adopted a resolution on December 1, 1952, declaring its intention to construct an extension to its existing sewerage system to serve the Nameoki area. Granite City is a municipal corporation of

around 35,000 population. In 1949 it annexed to it another city known as the city of Nameoki, populated by some five or six thousand inhabitants, and now known as the Nameoki area of Granite City. Prior to the annexation, Granite City had installed an extensive sewerage system serving the entire city. The city of Nameoki had no sewerage system and its sewerage was and now is disposed of by septic tanks and cesspools. It is stipulated by the parties hereto that this is an exact statement of facts, and that the lack of an adequate sewerage system constitutes a serious menace to the public health of the entire city. It is further stipulated that the present population of the Nameoki area is about 8000 persons, and is expected to increase by 4000 persons within the near future. The resolution set forth the boundaries of the proposed sewerage system extension, of what the system would consist, its estimated cost, possible rates to be charged users thereof, reserved the right of the city council to establish separate and different property classifications and to establish separate and different rates as the occasion may arise, and stated the connection charge. Under the provision of the resolution a public hearing was held and notice was sent to persons as provided by law. At the public hearing it was unanimously agreed that the project be built as provided in the resolution and on January 15, 1953, in accordance with the wishes of the persons at the hearing, the city council adopted a second resolution determining to proceed with the construction and acquisition of said sewerage system extension, and to adopt an ordinance for the issuance of sewer revenue bonds to defray the cost of said extension.

The complaint alleged several constitutional reasons why the statute, under the provisions of which Granite City proposes to construct this sewerage system extension, is invalid. Plaintiff, therefore, prayed for a declaratory judgment finding the statute unconstitutional and the reso-

lutions of the city under said statute illegal. The procedure of the city council pursuant to said statute is not in issue.

The matter was submitted to the court on the pleadings and stipulation of the parties, together with arguments of counsel thereon. The circuit court of Madison County held the statute constitutional, the proceedings thereunder by the city of Granite City legal and binding obligations, and authorized the construction program of the sewerage system extension.

It is first urged by plaintiff that the statute here in issue is in violation of the constitution of the United States and of the State of Illinois in that it permits plaintiff to be deprived of his property without due process of law. Plaintiff contends that the city has singled out an area for the purpose of locating a sewer system and seeks to issue revenue bonds to finance the construction of said system payable solely by the inhabitants of the area where the sewer is to be located. Thus it is urged that the statute is in violation of the due-process clause of both constitutions in that it does not apply to all of the citizens of the community and is a private law affecting only the rights of individuals in the locality to be served. Hence, property owners in the locality to be served will be burdened with an expense for the use of a sewer system that other citizens of the city do not have to bear while enjoying the complete use of the sewer system without any such charge.

The case at hand involves a situation where a privilege is extended to the property owners of the area to avail themselves of the use of the sewer or not as they see fit, and where the price to be paid for the privilege is tentatively fixed beforehand. Where the use of such privilege is left optional with the property owner, by his election to avail himself of it or not, he contracts with the city to pay the rental fixed by its ordinance, if he elects to use it. It is obvious that plaintiff will be subject to no charge unless

he elects to use the sewer, and such election constitutes a contract between himself and the city to pay so much as is the fixed charge for the use thereof. (*Carson* v. *Sewer Commissioners of Brockton,* 182 U.S. 398.) There is no element of deprivation here or even of taxation, but one of contract, into which the property owner may or may not enter. There is no allegation in the complaint that the plaintiff will be required to discharge into this sewer system. No allegation is made that the present charges fixed by the council are unreasonable in any particular. Since the property owner may use the sewer or not, as he sees fit, and if he does choose to use it he contracts to pay a charge, certainly no deprivation of property without due process of law occurs.

The moneys obtained from the use of the proposed sewer will go to retire the revenue bonds issued to pay for the construction of this sewer extension. It is only those property owners located in the area to be served by this sewer who will have access to the use of this sewer. Other citizens of the city of Granite City who are not located in the Nameoki area cannot use this sewer extension. Moreover, those citizens use a sewer previously constructed and for which they have paid by their taxes unaided by the residents of the Nameoki area.

It has been stipulated and agreed between the parties that the construction of a sewerage system to serve the Nameoki area is necessary to remove a serious health menace. Laws which tend to promote public health, comfort, safety and general welfare are deemed proper exercise of the police power. The legislature has the full right to delegate the execution of the police power to a municipality and vest it with the authority necessary for the execution of that power. (*People ex rel. Royal* v. *Cain,* 410 Ill. 39.) The constitutional guaranties that no person shall be deprived of life, liberty, or property without due process of law, and that no State shall deny to any person within

its jurisdiction the equal protection of the laws, were not intended to limit the subjects upon which the police power of the State may lawfully be asserted in matters of health protection any more than in any other connection. It has been almost universally held in this country that the constitutional guaranties, including the prohibition of deprivation of property without due process, must yield to the statutes and ordinances designed to promote the public health as a part of the police powers of the State. (*People ex rel. Baker* v. *Strautz,* 386 Ill. 360; *People* v. *Anderson,* 355 Ill. 289; *City of Evanston* v. *Wazau,* 364 Ill. 198.) It is manifest that the purpose of the statute is to permit the construction of sewers for the disposal of wastes and the ensuing protection of the public health. It is stipulated that the enactment of the resolution and all these proceedings by the city council in this situation were for the very purpose of eliminating an existing menace to the public health. The statute in question and the resolutions of the city council are, therefore, proper enactments under the police power. No constitutional rights could possibly have been infringed by these proceedings since such rights must yield to a valid exercise of the police power.

The second issue urged by the plaintiff is that this statute permits the city council to extend a sewer system into a particular locality to a class of persons and compel them to pay a charge for the use of that sewerage system when other persons, residents of the same city, enjoy a sewer system without paying any rental charges therefor. For this reason it is contended that the statute is discriminatory to a certain class of residents and citizens of the city and violates both State and Federal constitutions. It has been stated in *Schuman* v. *Chicago Transit Authority,* 407 Ill. 313, that "Section 22 of article IV of our constitution prohibits the General Assembly from passing any local or special law granting to any corporation, association or individual any special or exclusive privilege,

immunity or franchise whatever. This provision supplements the equal-protection clause of the fourteenth amendment to the Federal constitution and prevents the enlargement of the rights of one or more persons in discrimination against the rights of others. (*Michigan Millers Mutual Fire Ins. Co.* v. *McDonough,* 358 Ill. 575; *Marallis* v. *City of Chicago,* 349 Ill. 422.) Laws are not deemed special or class legislation merely because they affect one class and not another, provided they affect all members of the same class alike. In short, the fact that a law discriminates against an individual or group is not, of itself, sufficient to render it invalid. (*Hansen* v. *Raleigh,* 391 Ill. 536.) The controlling question is always whether the classification of persons or objects for purposes of legislative regulation is based upon some substantial difference bearing proper relation to the classification or, on the other hand, is arbitrary and capricious. (*People* v. *Deatherage,* 401 Ill. 25; *Crews* v. *Lundquist,* 361 Ill. 193.) Unless the legislative action is clearly unreasonable and there is no legitimate reason for the law which would not require with equal force its extension to others whom it leaves untouched, the courts do not interfere with the legislative judgment. *Hansen* v. *Raleigh,* 391 Ill. 536." (See *Hansen* v. *Raleigh,* 391 Ill. 536; *Keig Stevens Baking Co.* v. *City of Savanna,* 380 Ill. 303; and *Youngquist* v. *City of Chicago,* 405 Ill. 21.) It was held in *Louisville and Jefferson County Metropolitan Sewer District* v. *Joseph E. Seagram & Sons, Inc.,* 307 Ky. 413, that a city ordinance requiring owners of land outside the city's sewerage system to pay an annual charge therefor, when no charge was made to owners of land within the city for the same service, was not invalid as a denial of due process of law, or a denial to the outsiders of the equal protection of the law. The charge was held to equalize the burden by requiring those who had paid no part of the cost of construction of the sewer to do so by paying for its use.

The same considerations apply with equal force in this instance. The property owners of the Nameoki area were not within the city limits of Granite City when its existing sewer system was constructed and paid for by the taxes of the property owners of Granite City. The sewerage system extension will serve only the property located in the Nameoki area, and the sewerage waste of the Nameoki area will be carried into and through the existing sewerage system of Granite City. It is only proper that the property owners of the other areas of Granite City should not pay for a sewerage extension which only the Nameoki area can use, even though, as a matter of public health, the city could charge all users of the system for the cost of an extension in any area of the city. It is also proper that the burden of the extension should be borne by the Nameoki area property owners who elect to have the benefit of use of the existing sewer for which they paid nothing in taxes. It is a reasonable classification to require the property owners and/or residents of the area to pay the cost of the construction of the sewer system by which sewage would be carried from the locality into the existing sewer system. Moreover, all those property owners in the Nameoki area who elect to use the sewer system extension, while reasonably classified into a separate class, are at the same time all affected alike according to the use they make of the sewer. The statute is clearly constitutional, not only because it constitutes a proper exercise of the police power, but for the further reason that the legislation sets forth a reasonable classification to carry out the purposes and intent of the statute.

It is next contended that this statute, in authorizing the construction of the sewer extension to be financed by revenue bonds, is in violation of sections 9 and 10 of article IX of the Illinois constitution. Section 9 of article IX permits the General Assembly to vest the corporate authorities of cities with power to make local improvements by special assessment, or by special taxation of contiguous

property, or otherwise. Section 10 prohibits the General Assembly from itself imposing taxes on municipal corporations, or the inhabitants or property thereof, for corporate purposes. Relying on a definition contained in *Northwestern University* v. *Village of Wilmette,* 230 Ill. 80, that a local improvement is "a public improvement, which by reason of its being confined to a locality, enhances the value of adjacent property, as distinguished from benefits diffused by it throughout the municipality," plaintiff maintains that this sewerage system extension in the Nameoki area is purely a local improvement, specially benefiting the adjacent property, and may be paid for only by special assessment or special taxation. The difficulty with this position lies in its assumption that section 9 of article IX of the constitution prescribes special assessment or special taxation as exclusive methods of financing local improvements. That is not the case. The pertinent language of section 9 of article IX is: "The general assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of contiguous property, or otherwise." Because the method of financing local improvements is not limited to special assessments or special taxation there is no necessity for considering the local or public character of the benefits flowing from the improvement here involved.

Plaintiff urges as its fourth contention that section 60-16 of the statute permits a lien against a property owner even though he may not be a user of the sewer system, and deprives property owners of due process of law, as no notice is required to be given of any delinquency. Hence a person's property could have a lien upon it without any notice or any kind of hearing whatever. Plaintiff claims the section violates the due-process clause of both the State and Federal constitutions. It is provided in section 60-16 that: "Charges or rates shall be established, revised, and maintained by ordinance and become payable as the corporate

authorities may determine by ordinance. Such charges or rates are liens upon the real estate upon or for which sewerage service is supplied whenever the charges or rates become delinquent as provided by the ordinance of the municipality fixing a delinquency date."

The act providing for declaratory judgments must be restricted to questions that are within the province of a court to determine. It cannot be construed as authorizing a court to grant declarations of rights involving mere abstract propositions of law without regard to the interest of the parties in such question, or the giving of advice. "The statute provides that courts 'may in cases of actual controversy make binding declarations of rights, having the force of final judgments.' It also provides that a 'binding declaration of rights' may be granted regardless of whether any consequential relief is or could be claimed. * * * The statute is clear that before a declaration of rights may be made there must be an 'actual controversy'." (*Saline Branch Drainage Dist.* v. *Urbana-Champaign Sanitary Dist.* 399 Ill. 189.) No lien has been filed by the city against the property of the plaintiff, nor is there any imminent possibility of one being so filed. It is axiomatic that one may not complain of a statutory provision which does not affect him. (*City of Edwardsville* v. *Jenkins,* 376 Ill. 327.) No actual controversy involving this lien provision of the statute being here involved, the question is not determinable in an action for declaratory judgment.

It is finally contended by plaintiff that any revision of rates made by the city council as authorized by section 60-16 without notice and a hearing would violate the dictates of due process. No provision is incorporated in that section requiring notice or public hearing prior to revision of sewerage service rates. This contention is without basis in the law for the same reason previously advanced to meet plaintiff's first due-process argument. Plaintiff may or may not use the sewerage system extension at his own election.

Upon electing to use it he contracts for those charges assessed for its use, or such revised charges as may be subsequently determined. Certainly, there is no lack of due process when plaintiff or any other user contracts to pay such charges as may be determined to be necessary. Moreover, plaintiff may elect to cease his use of the sewer system if he determines that the charges are too high.

From the foregoing it is apparent that the statute in question, and the resolutions of the city of Granite City adopted thereunder, do not violate any of the constitutional provisions of either the State or Federal constitution asserted by plaintiff. For these reasons, the judgment of the circuit court of Madison County is affirmed.

*Judgment affirmed.*