(No. 36398.—

JOSEPH E. HARTMAN, Appellant, *vs*. THE AURORA SANITARY DISTRICT, Appellee.

*Opinion filed September 22, 1961.*

SCHAEFER and HERSHEY, JJ., dissenting.

THOMAS J. BRANBURY, of Aurora, for appellant.

ROBERT E. DOLPH, of Aurora, for appellee.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

The plaintiff, Joseph E. Hartman, applied for a permit to make a connection with a sewer line of the defendant, Aurora Sanitary District. The permit was granted, but

only after he had paid, under protest, the required "connection" fee of $160. Thereafter he brought this action to recover the amount he had paid, alleging that the ordinance under which the charge was made, and the statute relied upon to authorize it, violated his constitutional rights. The defendant answered, its motion for judgment on the pleadings was granted, and the complaint was dismissed. The plaintiff appeals directly to this court on the ground that the validity of a statute is involved. Ill. Rev. Stat. 1959, chap. 110, par. 75.

The Aurora Sanitary District is organized under the Sanitary District Act of 1917. (Ill. Rev. Stat. 1959, chap. 42, pars. 299-317f.) Its original area was 10 square miles. Annexations have expanded its area to 34 square miles, and its population has increased from 43,000 in 1930 to 80,000. The disposal plant of the District, and its original interceptor lines, were financed by a bond issue which was fully retired in 1946 from the proceeds of taxes levied upon the property then within the District. The plaintiff's property was annexed to the District in 1953, and since that time the plaintiff has paid the taxes levied upon his property for the operation and maintenance of the facilities of the District. In November of 1960 he applied for a permit to make a connection to one of the sewer lines of the District, and the charge which he seeks to recover in this action was imposed at that time.

The ordinance of the District under which the charge was made was adopted in March of 1958. It recited that "the plant and main or interceptor lines" of the District "will in their operation and expansion conduce to the better preservation of the public health, comfort and convenience of the community of the District if certain required improvements be made to the existing plant and certain extensions made to the existing interceptor or main line system; that these purposes can best be accomplished by the establishment of a capital improvement fund; that this fund should

be acquired in a fair and equitable way from landowners within the area of the District, taking into consideration the fact that the existing capital improvement facilities were constructed at the expense of certain landowners of certain areas within the District; that reasonable classification should be made for contributions to this fund; * * * that connection fees to the Aurora Sanitary District system should be charged in proportion to the benefits received and that it is the determination of the Board of Trustees to provide for depreciation and obsolescence of the plant * * * by the establishment of this fund and the contributions thereto in a fair and equitable manner proportionate to the benefits gained."

The ordinance then divided the District into two areas: "Class One," including the original territory of the District, and those areas annexed prior to December 31, 1948, and "Class Two," including all other territory within the District. Four categories, "Single family dwelling," "Multiple family dwelling," "Industrial or commercial establishments" and "Public buildings" were defined, and fees were established for each category in each of the two areas established by the ordinance. For structures in Class Two the fee was described as a "connection and inspection fee," and for those in Class One as an "inspection fee." In each instance the fee was fixed at a higher amount in the Class Two area than in the Class One area. For single family dwellings, the category with which we are here concerned, a connection and inspection fee of $160 was imposed in the Class Two area. For a single family dwelling in the Class One area, the inspection fee was fixed at $15.

For its authority to enact the ordinance, the District relies upon an amendment to section 7 of the Sanitary District Act of 1917. That amendment, adopted in 1959, provides that "the Sanitary District shall have power to collect a fair and reasonable charge for connection to its system in addition to those charges covered by normal taxes, for

the construction, expansion and extension of the works of the system, the charge to be assessed against new or additional users of the system and to be known as a connection charge. The funds thus collected shall be used by the Sanitary District for its general corporate purposes with primary application thereof being made by the necessary expansion of the works of the system to meet the requirements of the new users threof." Ill. Rev. Stat. 1959, chap. 42, par. 306.

The parties before us have argued principally the constitutionality of the statute and ordinance. Before reaching the constitutional issue, however, we must first determine if the statute authorizes the adoption of the kind of ordinance here involved. The legislature has empowered the Sanitary District "to collect a fair and reasonable charge for connection to its system * * * for the construction, expansion and extension of the works of the system," from new users of the system. The ordinance of defendant District has established such connection fee at $160 in one area and $15 in another. While the record before us does not indicate the precise method by which the connection fees were established, the ordinance recites "that connection fees to the Aurora Sanitary District system should be charged in proportion to the benefits received and that it is the determination of the Board of Trustees to provide for depreciation and obsolescence of the plant, interceptor or main line facilities and all other facilities and appurtenances of the Aurora Sanitary District system by the establishment of this fund and the contributions thereto in a fair and equitable manner proportionate to the benefits gained."

In the case at bar the General Assembly has delegated to the District the power to collect a charge from new users for connection to its system. In the absence of precise directions as to the manner in which such charge is to be established, it is implicit that it must be reasonable. (*Dean Milk Co.* v. *City of Chicago,* 385 Ill. 565; *City of Mt.*

*Vernon* v. *Julian,* 369 Ill. 447; 8 I.L.P. sec. 135.) Nevertheless, the District, of necessity, must be given discretion in determining the amount of such a charge. We know of no requirement that a municipality, acting pursuant to statute, must affirmatively show the criteria by which they exercised such discretion.

It does not appear from the face of the ordinance that the connection fee assessed is unreasonable, arbitrary or oppressive. Rather the ordinance established a connection fee pursuant to statutory authority. Such an ordinance is presumptively valid, and the burden is upon the party asserting its invalidity. (*Henson* v. *City of Chicago,* 415 Ill. 564; 8 I.L.P. sec. 149.) It is not unreasonable that the District may use various factors in determining a fair and reasonable charge for connection. Past cost and distance from the plant and other factors cannot be said to be illegitimate criteria in arriving at such a charge. We find nothing in this record to show that this fee is designed to accomplish more than the purposes of the statute. There is no showing of unreasonableness in this record. We therefore conclude that the General Assembly purported to delegate to the District the power to legislate on the subject of connection charges, and that the ordinance before us is a proper exercise of that delegated power.

We therefore must consider the contentions of plaintiff that the purported delegation of power by the General Assembly violates specific provisions of the constitution of Illinois.

The plaintiff insists that both the statute and the ordinance are unconstitutional in that they impose a special nonuniform tax that is neither needful nor for a corporate purpose, in violation of article II, section 2; article IV, section 22; and article IX, sections 1 and 9, of the constitution of Illinois.

The District contends, however, that both the ordinance

and the enabling statute are legitimate and nondiscriminatory exercises of the police power, and do not constitute an improper tax.

We feel that plaintiff's arguments have been carefully considered in the recent case of *Spalding* v. *City of Granite City,* 415 Ill. 274. In that case Granite City enacted an ordinance, pursuant to statute, for the financing of an extension of the sanitary sewer system in the Nameoki addition by means of revenue bonds payable solely by the residents of that area. In answer to the same constitutional attacks as presented here, we said: "The case at hand involves a situation where a privilege is extended to the property owners of the area to avail themselves of the use of the sewer or not as they see fit, and where the price to be paid for the privilege is tentatively fixed beforehand. Where the use of such privilege is left optional with the property owner, by his election to avail himself of it or not, he contracts with the city to pay the rental fixed by its ordinance, if he elects to use it. It is obvious that plaintiff will be subject to no charge unless he elects to use the sewer, and such election constitutes a contract between himself and the city to pay so much as is the fixed charge for the use thereof. (*Carson* v. *Sewer Commissioners of Brockton,* 182 U.S. 398.) There is no element of deprivation here or even of taxation, but one of contract, into which the property owner may or may not enter. * * * The property owners of the Nameoki area were not within the city limits of Granite City when its existing sewer system was constructed and paid for by the taxes of the property owners of Granite City. The sewerage system extension will serve only the property located in the Nameoki area, and the sewerage waste of the Nameoki area will be carried into and through the existing sewerage system of Granite City. It is only proper that the property owners of the other areas of Granite City should not pay for a sewerage extension which only

the Nameoki area can use, * * * It is also proper that the burden of the extension should be borne by the Nameoki area property owners who elect to have the benefit of use of the existing sewer for which they paid nothing in taxes. It is a reasonable classification to require the property owners and/or residents of the area to pay the cost of the construction of the sewer system by which sewage would be carried from the locality into the existing sewer system. Moreover, all those property owners in the Nameoki area who elect to use the sewer system extension, while reasonably classified into a separate class, are at the same time all affected alike according to the use they make of the sewer. The statute is clearly constitutional, not only because it constitutes a proper exercise of the police power, but for the further reason that the legislation sets forth a reasonable classification to carry out the purposes and intent of the statute."

We believe that the reasoning involved in the *Granite City case* is equally applicable here. It is patent that the rapid expansion of our municipalities has rendered inadequate prior facilities developed for the health and welfare of the community. It is only proper that all citizens of the community should share equally in the cost of maintaining a sanitary plant which benefits the health and welfare of the entire community by the proper disposal of sewage. It would seem equally fair that those property owners who benefit especially, not from the maintenance of the system, but by the extension of the system into an entirely new area, should bear the cost of that extension. *Spalding* v. *City of Granite City,* 415 Ill. 274; *Louisville and Jefferson County Metropolitan Sewer District* v. *Seagram & Sons, Inc.,* 307 Ky. 413, 211 S.W.2d 122, 4 A.L.R. 2d, 588.

The pattern created by the present ordinance is not complex. All property owners pay an annual tax for the operation of the sanitary system. New additions to the

community, however, create new problems of public health which must be met either by an extension of the present system or the installation of private septic systems. The present statute merely permits the District to offer to residents of a new area a convenient and economical way of handling the sanitation problem they have created. There is nothing mandatory about either the statute or the ordinance. Residents of new areas are merely told that the District will treat all sewage brought into our system for the annual uniform tax. If, however, you wish the District to go out and provide new connections and interceptors to care for your problems, you must pay a reasonable charge for this service.

We have found that such reasonable charges have been uniformly sustained as a service charge rather than a tax. (*Maryville* v. *Cushman,* 363 Mo. 87, 249 S.W.2d 347; *State* v. *Taylor,* 149 Ohio St. 427, 79 N.E.2d 127; *City of North Muskegon* v. *Bolema Construction Co.* 335 Mich. 520, 56 N.W.2d 371; *Chastain* v. *Oklahoma City,* 208 Okla. 604, 258 P.2d 635.) It is our conclusion that the present statute creates a legitimate method of financing needed extensions of sanitary systems by means of a service or connection charge rather than a general tax. The imposition of such a charge upon those who voluntarily seek to use the extension violates no provision of our constitution.

While the actual prorata cost of the extension and needed plant expansion to each new user cannot be determined with mathematical precision, we find nothing in this record to show that the charge set by the District is unreasonable. The ordinance is, therefore, not vulnerable to that attack in this proceeding.

From the foregoing analysis, we must conclude that the trial court was correct in entering judgment dismissing the complaint, and said judgment is accordingly affirmed. .

*Judgment affirmed.*

Mr. JUSTICE SCHAEFER, dissenting:

I dissent from the opinion of the court for the following reasons:

(1) The statute that is relied upon by the Sanitary District can not authorize the ordinance under which the challenged charge was made. The ordinance was adopted in March of 1958. It is not suggested that there was then in effect any statute authorizing such a charge. The statute upon which the Sanitary District relies for its authority was not enacted until 1959.

Whether the legislature could have validated the ordinance is at best doubtful. With respect to legislative validation of unauthorized municipal action this court has said: "However, the General Assembly cannot give validity to the exercise of a power where such assumed power did not exist at the time it was purported to have been exercised. The power to levy a tax by an administrative body is jurisdictional. Jurisdiction to act cannot be conferred by subsequent legislation where the power to act was lacking at the time the purported action was taken. *People* v. *Chicago and Eastern Illinois Railway Co.* 365 Ill. 202." (*People ex rel. Larson* v. *Thompson,* 377 Ill. 104, 112.) But even if the legislature could have validated the prior municipal action, it made no attempt to do so. In such a case, "An ordinance void under a statute existing at the time of its enactment is not validated by amendment of the statute so that the ordinance might be validly enacted under the amended law." (37 Am. Jur. (Mun. Corp. § 168) p. 798; see also, *State* v. *Owen,* 88 S.E.2d (N.C. 1955) 832, and cases cited at p. 835.)

(2) The statute that is relied upon by the Sanitary District does not authorize the ordinance under which the challenged charge was made. The opinion of the court states that "the record before us does not indicate the precise method by which the connection fees were established." The concluding paragraphs of the opinion then proceed

upon the assumption that what is involved is "a method of financing needed extensions of sanitary systems by means of a service or connection charge rather than a general tax." Upon this assumption, and upon the authority of *Spalding v. City of Granite City,* 415 Ill. 274, which did involve such a method of financing, the opinion sustains the charge.

The underlying assumption is incorrect. The charge with which we are now concerned is not based upon the cost of extensions or additions to the existing system. Rather, the charge is designed to recoup from the new users of the system the cost of the original treatment plant which was paid for by a bond issue that was fully retired in 1946. This purpose, and the basis upon which the charge was computed are entirely clear from the record. The answer of the defendant, "states the fact to be that neither the plaintiff nor his predecessors in title have ever been taxed directly or indirectly for these said capital improvements or for the retirement of the bonds from which money was secured to construct these capital improvements; * * *." And in its brief, in supporting the reasonableness of the fees, the District points out the basis upon which they were computed. It says: "They represent the amounts paid by similar landowners in the same general territory in the past for the establishment of the treatment plant and interceptor lines in the first instance." The defendant's answer states that "The funds thus collected constitute a sum in excess of $100,000, and that said fund has been used both for the establishment of additional interceptor lines and for the rehabilitation and repair of the disposal plant * * *."

The statute upon which the District relies authorizes a sanitary district "to collect a fair and reasonable charge for connection to its system * * * for the construction, expansion and extension of the works of the system * * *." (Ill. Rev. Stat. 1959, chap. 42, par. 306.) It does not authorize the imposition of a charge for "repair and rehabilitation" of the original plant,

The statute looks forward toward "construction, expansion and extension," while the ordinance looks backward in an effort to recoup, from a selected group of new users, costs that were incurred in bygone years. While it is true that the plaintiff did not pay any part of the cost of the original facilities, which were fully paid for by 1946, it is also true that he was not able to use those facilities over the long period that intervened between the original construction and the time when he sought to connect with the system.

Nothing in the forward looking language of the statute suggests that the General Assembly intended to authorize a sanitary district to impose a connection charge for the purpose of reimbursing the taxpayers of the original district for the cost of existing, and perhaps substantially depreciated facilities.

Mr. JUSTICE HERSHEY concurs in the foregoing dissent.