The Aurora Sanitary District, a Municipal Corporation, Plaintiff-Appellee, v. Randwest Corporation and Newmark Builders, Inc., Defendants-Appellants.

Gen. No. 69–145.

Second District.

May 21, 1970.

Puklin, Nelson and Dunn, of Aurora, for appellants.

William H. Wake, of Aurora, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

The Aurora Sanitary District, plaintiff, filed a complaint demanding certain connection fees from the defendant Randwest Corporation, and subsequently filed a similar separate complaint against defendant New-Mark Builders, Inc. in connection with its subdivision known as Heritage Green. The cases were consolidated, and an amended complaint filed against the defendant New-Mark Builders, Inc., demanding connection charges

for a subdivision known as Beau Ridge. Motions for summary judgment supported by affidavits and depositions were filed by both plaintiff and defendants. This appeal is from a judgment order granting plaintiff's motion for summary judgment and dismissing the defendants' motions.

Both defendants challenge the validity of the ordinance of the sanitary district under which the charges were levied. Defendant New-Mark Builders also raises an issue on the pleadings in the denial of its defense based upon the Statute of Limitations.

There are no disputed questions of fact. The Aurora Sanitary District was organized under an act passed in 1917 and which provided, as material at the time the questioned connection fee was imposed:

> ". . .
> Every such sanitary district shall proceed as rapidly as is reasonably possible to provide sewers and a plant or plants for the treatment and purification of its sewage, which plant or plants shall be of suitable kind and sufficient capacity to properly treat and purify such sewage so as to conduce to the preservation of the public health, comfort and convenience and to render said sewage harmless, insofar as is reasonably possible to animal, fish and plant life. . . ." (Ill Rev Stats 1957, c 42, § 306.)

The district encompasses an area of approximately 35 square miles and collects and treats sewage for a population of approximately 87,000 persons.

In 1931 the district passed its Ordinance No. 38, regulating connections with the use of its sewers. The ordinance requires that a permit be obtained from the sanitary district for any connections being made to a "District Sewer," which is defined:

> "(c) 'District Sewer' shall mean any sewer constructed, maintained and/or operated by The Aurora

446

Sanitary District, including any and all manholes, intercepting chambers or other appurtenances connected therewith.

"..."

On March 7th, 1958 the district passed its Ordinance No. 204, which required payment of a connection fee in certain instances before any permit required under its Ordinance No. 38 will be issued. The ordinance divided the district into two geographic areas designated as Class One and Class Two. The ordinance provided that before a connection permit for connection of buildings located in Class Two will be issued a connection fee of $160 for each single-family unit must first be paid to the plaintiff. It is expressly provided in the ordinance that no connection fee is required for the connection of buildings located in the Class One area. However, an inspection fee of $15 per single-family unit is required for connections made in the Class One area. Defendants' property was within the Class Two area.

The corporate boundaries of the City of Aurora are located within the corporate limits of the Aurora Sanitary District. The city has a sewer system of its own.

The defendants are engaged in the development of dwelling units in the City of Aurora. The defendant New-Mark Builders built 486 single-family homes, and the defendant Randwest built 37 multiple-family units, containing 232 single-family units, during the time material here.

Both defendant corporations are taxpayers of the plaintiff district.

Subsequent to the passage of plaintiff's Ordinance No. 204, both defendants connected numerous single-family units to the sewer system of the City of Aurora. The sewers to which the connections were made were installed and paid for by the defendants and were then accepted by, and became the property of, the City of

447

Aurora. The sewers have since been maintained exclusively by the City.

The sewer system of the City is tributary to the Aurora Sanitary District sewer system and that part of the City sewer system to which the defendants connected their buildings joins the Sanitary District sewer system by connection to an interceptor constructed by the plaintiff in 1931 or 1932. The plaintiff has provided no new connection, interceptor or extension into which the sewers to which the defendants connected their buildings flow or connect.

On September 15th, 1964, the plaintiff filed its complaint against the defendant, Randwest, demanding payment of connection fees up to the date of the filing. The initial complaint against New-Mark Builders was filed on September 22nd, 1964, for the connections in the Heritage Green Subdivision. Thereafter amended complaints were filed by plaintiff, with leave of court, against each of the defendants adding a prayer for a permanent injunction.

A temporary writ of injunction was issued against defendants on December 29th, 1964 restraining further connections without the obtaining of a permit and the paying of a fee. Since the issuance of the writ numerous sewer connections have been made by the defendants and the fees paid under protest.

On November 16th, 1966, plaintiff filed, with leave of court, a Count II of its amended complaint against the defendant New-Mark seeking judgment for connection fees for sewer connections made by the defendant in its Beau Ridge Subdivision.

Defendants contend that plaintiff's Ordinances No. 38 and No. 204, by their terms, do not apply to defendants' connections, but may only apply to sewers constructed and/or operated by the plaintiff; therefore, plaintiff was without legislative authority to exercise jurisdiction

over sewer connections made to a sewer system of the City of Aurora. Additionally, defendants argue the absence of legislative authority to enable the district to enact either Ordinance No. 38 or Ordinance No. 204 if those ordinances are construed to apply to connections to city sewers. Defendants concede the legislative authority in the sanitary district to pass an ordinance to make charges for connections, although within a city, by an amendment to Chapter 42, supra, which was passed in 1959 and added the provision in Section 306, which granted the power "to collect a fair and reasonable charge for connection to its system in addition to those charges covered by normal taxes, for the construction, expansion and extension of the works of the system, the charge to be assessed against new or additional users of the system and to be known as a connection charge." They contend, however, that the enabling legislation cannot sustain the previously passed Ordinance 204. (Defendants also concede that the plaintiff, by passage of an amendment to its Ordinance 204, which became effective on September 5th, 1967, thereafter became authorized to charge the fees in question, from that time forward.)

Plaintiff claims that its Ordinance 204 was adjudicated as valid, under the authority of chapter 42, section 306, supra, by a decision of the Illinois Supreme Court with reference to the same Ordinance 204, in the case of Hartman v. Aurora Sanitary Dist., 23 Ill2d 109, 177 NE2d 214 (1961); but that in addition to section 306, there is implied authority to support the Sanitary District connection charges in section 319.7 of chapter 42 which was passed in 1941 prior to the enactment of Ordinance 204. (Ill Rev Stats 1967, c 42, § 319.7.) That section provides in general terms that the district has the power by ordinance "to charge the inhabitants thereof for the use and service of its sewerage system and to establish charges or rates for that purpose." The same provision

449

also gives the Sanitary District the authority to make, enact, and enforce all needful rules, regulations, and ordinances for the improvement, care, and protection of its sewerage system, which may be conducive to the preservation of the public health, comfort, and convenience.

We first consider the impact of the decision in Hartman, supra, which both plaintiff and defendants have cited, but with varied interpretation.

Plaintiff suggests that the court in Hartman specifically upheld the power of the Aurora Sanitary District to pass Ordinance 204, based on the general legislative authority given under chapter 42, section 306, supra. Defendants argue that Hartman, who was seeking to connect directly to the Sanitary District sewers, did not raise the issue, here raised, that there was no legislative authority to pass the ordinance, but specifically attacked the ordinance on the basis that it imposed a special nonuniform tax in violation of constitutional provisions; and that the court found the connection fee to be a "service charge" rather than a tax in that particular situation. Reference is made to the following language (pages 115, 116) of the opinion:

> "The pattern created by the present ordinance is not complex. All property owners pay an annual tax for the operation of the sanitary system. New additions to the community, however, create new problems of public health which must be met either by an extension of the present system or the installation of private septic systems. The present statute merely permits the District to offer to residents of a new area a convenient and economical way of handling the sanitation problem they have created. There is nothing mandatory about either the statute or the ordinance. Residents of new areas are merely told that the District will treat all sewage brought

450

into our system for the annual uniform tax. If, however, you wish the District to go out and provide new connections and interceptors to care for your problems, you must pay a reasonable charge for this service."

The well reasoned dissenting opinion of Justice Schaefer, concurred in by Justice Hershey, pointed out that the district was relying on the amendment to section 306 which was not passed until 1959. The dissent observed that the amendment could not relate to an ordinance passed prior to the granting of this power; and also concluded that the statute, by its terms, "looks forward toward 'construction, expansion and extension,' while the ordinance (No. 204) looks backward in an effort to recoup, from a selected group of new users, costs that were incurred in bygone years." (Page 119.)

■ Following the law of the case as expressed in the majority opinion, we believe that Hartman is not controlling here. There the validity of Ordinance 204 was presumed in the absence of a direct attack upon it and was upheld as a service charge against constitutional objections that it was a nonuniform tax.

In Hartman the Supreme Court relied principally upon Spalding v. City of Granite City, 415 Ill 274, 113 NE2d 567 (1953) as the basis for its opinion. That case involved a method of financing needed extensions of the sanitary system by means of a service or connection charge rather than by a general tax. The court noted on page 281:

"It is only proper that the property owners of the other areas of Granite City should not pay for a sewerage extension which only the Nameoki area can use, even though, as a matter of public health, the city could charge all users of the system for the cost of an extension in any area of the city. It

451

is also proper that the burden of the extension should be borne by the Nameoki area property owners who elect to have the benefit of use of the existing sewer for which they paid nothing in taxes. It is a reasonable classification to require the property owners and/or residents of the area to pay the cost of the construction of the sewer system by which sewage would be carried from the locality into the existing sewer system."

In the case before us, plaintiff does not allege and show any special service to defendants. Each of the defendants receives no greater benefit from the plaintiff than is afforded to persons in the Class One area in which no connection fee is charged. There is no evidence of any new interceptors or connections made to care for sewage problems created by defendants. The improvements made in tanks, filters, and chlorination by the sanitary district between 1960 or 1961 and 1965 or 1966 were financed by general obligation bonds which were paid by the defendants along with other taxpayers in their general tax bills.

We think the language of the majority opinion of Hartman also makes it apparent that the court was dealing only with the specific facts before it: a direct connection to the sanitary district sewers. Such a situation does not raise or decide the objection in the instant case to the Sanitary District's legislative attempt to impose a connection fee for connecting to a city sewer prior to the appropriate enabling act providing for such jurisdiction.

■■ The 1959 amendment to Section 306 (Ill Rev Stats 1959, c 42, § 306) cannot be said to have validated the prior Ordinance No. 204. An ordinance which is void under a statute existing at the time of its enactment is not validated by amendment of the statute, particularly where the legislature does not specifically undertake to

452

do so. The People v. Chicago & E. I. Ry. Co., 365 Ill 202, 207, 6 NE2d 119 (1937); The People v. Thompson, 377 Ill 104, 112, 35 NE2d 355 (1941); 37 Am Jur, § 168, page 798; Hartman v. Aurora Sanitary Dist., supra, at page 117.

■ We cannot agree with plaintiff's argument that section 319.7 of chapter 42, supra, (which was passed in 1941) authorized the passage of Ordinance 204 in 1958. Prior to the 1959 amendment of section 306 which specifically gave the sanitary districts power to enact ordinances imposing connection fees to its sewers, the statute merely provided for collection of charges and rates for the use of the sanitary district sewage system, as such system was defined in the statute. Section 319.7 cannot be said to have authorized by implication the imposition of nonuniform and unequal connection charges for a connection to a sewer which was not even operated by the Sanitary District. In fact, the legislation providing a method for obtaining control of the operation of tributary municipal sewers, other than by purchase or contract, was not enacted until 1963. (Ill Rev Stats 1963, c 42, § 306.2.)

■ We are of the opinion that until the adoption by plaintiff of its comprehensive amendment to Ordinance 204 in 1967, pursuant to the enabling amendments of chapter 42 in 1959 and 1963 (section 306 and section 306.2 respectively), plaintiff had no authority to charge for connections made to the City of Aurora sewer system.

We believe that this conclusion is fortified by the express language of plaintiff's Ordinances No. 38 and No. 204 as originally enacted, both of which refer to "its sewers" and connections to a "sewer constructed, maintained and/or operated" by the Aurora Sanitary District.

■ We also find support for our conclusions in the fact that, aside from the limited enabling legislation passed by the State in 1963, sanitary districts had no

express or implied power to summarily take jurisdiction over sewers constructed in and under the control of a city or village although within the sanitary district boundaries. See Judge v. Bergman, 258 Ill 246, 254, 101 NE 574 (1913) ; City of Chicago v. Green, 238 Ill 258, 274, 87 NE 417 (1909). The various statutory provisions authorizing a sanitary district to enter into private property or city rights of way by condemnation in order to effectuate the purposes of the district are, of course, not involved here.

■ We believe that the trial court correctly ruled that the amended complaint grew out of the same transaction or occurrence alleged in the original complaint, namely the allegation that the defendant had made and was continuing to make connections to sanitary sewers within the territory of the Aurora Sanitary District without complying with its ordinances and that, therefore, the amended complaint related back in point of time to the filing of the original complaint under the provisions of Ill Rev Stats 1967, c 110, § 46–2. However, in the view we have taken of the case this does not appear to be material.

We conclude that the trial court erred in granting summary judgment to plaintiff on this record and remand the consolidated cases with directions to determine the total amount of money paid by defendants to plaintiff pursuant to the temporary injunction issued by the court below, for sewer connections made by defendants prior to September 5, 1967, and with directions to enter judgment reimbursing these payments to the defendants.

Reversed and remanded with directions.

ABRAHAMSON and MORAN, JJ., concur.